Frank HOWARD, Plaintiff-Appellant,

v.

William ARMONTROUT, Warden, Donald Clines, Assistant Warden, and George Brooks, Investigator, Individually and in their official capacities as members of the Missouri Department of Corrections, and the Missouri State Penitentiary, Jefferson City, Missouri, Defendants-Respondents.

No. WD 38676.

Missouri Court of Appeals, Western District.

March 24, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1987.

Application to Transfer Denied June 16, 1987.

Frank Howard, pro se.

William L. Webster, Atty. Gen., Jefferson City, Winfield J. Sinclair, Asst. Atty. Gen., St. Louis, for defendants-respondents.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

PER CURIAM.

Frank Howard, an inmate at the Missouri State Penitentiary (MSP), sued prison officials alleging deprivation of constitutional rights. Howard now appeals the dismissal of his petition for failure to state a claim.

We reverse and remand.

On November 23, 1985, unknown inmates set fire to Howard's cell destroying all of his personal property. After MSP officials questioned Howard about the fire, they placed him in detention and denied him contact with other prisoners. On December 26, 1985, Howard was transferred to the Special Management Facility and maintained on no-contact status.

On May 7, 1986, Howard filed suit against three MSP officials seeking a declaratory judgment and money damages for violations of Federal and state constitutional rights. The trial court treated Howard's petition as a civil rights action pursuant to 42 U.S.C. § 1983. In his petition, Howard alleged that the MSP officials violated § 217.375, RSMo 1986, by placing him in punitive segregation without notifying him of the reasons for his confinement, charging him with a conduct violation, or affording him a hearing. Howard objected to his no-contact status principally because it deprived him of an opportunity to consult with other inmates regarding lawsuits against MSP officials.

The MSP officials filed a motion to dismiss on June 25, 1986. Supporting the motion to dismiss was an affidavit made by Bill Armontrout, the warden. In his affidavit Warden Armontrout stated that after the fire, Howard was placed in detention, pending investigation. Aware that Howard had many enemies among the inmates and a history of violent behavior, MSP officials considered available options before transferring Howard to the Special Management Facility on December 26, 1985. Warden Armontrout further stated

that Howard was denied contact with other inmates not for punitive purposes, but for his own safety and the safety of other inmates. To his affidavit, the warden attached certified copies of prison documents, including reports of the fire, correspondence between Howard and prison officials regarding his no-contact status, detention orders, and classification committee forms.

In his response to the motion to dismiss, Howard maintained that the prison officials had not informed him of any rule violations, given him reasons for his confinement, or afforded him a hearing.

In dismissing the petition, the trial court found that the MSP officials confined Howard for his own safety and the safety of others and that his confinement was constitutionally and legally permissible because the prison officials had complied with § 217.375 by conducting the requisite hearings.

In their briefs both parties discuss whether the trial court properly dismissed Howard's petition for failure to state a claim under Rule 55.27. However, presentation of matters outside the pleadings converts a motion to dismiss into a motion for summary judgment. Rule 55.27; *Black Leaf Products Company v. Chemsico, Inc.*, 678 S.W.2d 827, 829 (Mo.App.1984). In the present case, because the trial court considered the warden's affidavit and attached documents, we must base our inquiry on the summary judgment principles set forth in Rule 74.04. Summary judgment is appropriate only when the moving party presents unassailable proof showing that no genuine issue of material fact exists. *Id.* "Unassailable proof" means proof leaving no room for controversy. *Porter v. Georgia Casualty & Surety Company*, 508 S.W.2d 27, 31 (Mo.App. 1974). We must scrutinize the record in the light most favorable to the non-moving party resolving all doubts in that party's favor. *Id.*

In the present matter, the factual controversy centers on whether the MSP officials afforded Howard the requisite hearings. Section 217.375 establishes the circumstances allowing prison officials to segre-

gate an inmate from other inmates. When an inmate has violated an institutional rule, he may be confined for a maximum of ten days in an adjustment unit without contact with the general prison population only after a proper hearing and upon order of the chief administrative officer. Sections 217.-375.1, 217.150(1). The chief administrative officer may transfer an inmate to an administrative segregation unit denying him contact with other inmates when an inmate is

(1) an immediate security risk, or
(2) violent, struggling and creating sufficient disturbance to indicate he is not in control of himself, or
(3) physically violent, or
(4) in urgent need to be separated from others for his own safety or that of others.

Sections 217.375.2, 217.150(2). Placing an inmate in an administrative segregation unit requires that a hearing be held within seventy-two hours. Section 217.375.2. Review hearings must be held thirty days after the initial period of confinement and every 90 days thereafter. Section 217.375.3.

 Ordinarily prison officials have broad administrative and discretionary authority over the institutions they manage and lawfully incarcerated persons retain only a narrow range of protected liberty interests under the Due Process Clause. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). However, a state may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures. *Id.* at 469, 103 S.Ct. at 870. Statutes regulating the use of administrative segregation in prisons create liberty interests when the language used has

an unmistakably mandatory character, requiring that certain procedures "shall", "will", or "must" be employed and that administrative segregation will not occur absent specified substantive predicates— viz., "the need for control" or "the threat of serious disturbance". *Id.* at 471–472, 103 S.Ct. at 871.

 Applying the standards enunciated by the United States Supreme Court in *Hewitt,* we find that § 217.375 creates a protected liberty interest. Under subsection 1, confinement in an adjustment unit requires a prior hearing and an order. Under subsection 2, administrative segregation may not take place unless the chief administrative officer determines that an emergency exists based on four specified situations. In subsections 2 and 3, the statute employs mandatory language by stating that hearings "shall be held" after an inmate's transfer to an administrative segregation unit.

To comply with the dictates of due process, an inmate placed in punitive or administrative segregation is entitled to a hearing.

... An informal, nonadversary evidentiary review is sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then available evidence against the prisoner, the Due Process Clause is satisfied. *Hewitt,* 459 U.S. at 476, 103 S.Ct. at 873.

The evidentiary review must occur within a reasonable time following an inmate's transfer to administrative segregation. *Id.* at 476 n. 8, 103 S.Ct. at 873 n. 8.

 The record convinces us that Howard's confinement resulted from security, not punitive, measures and was governed by the administrative segregation provisions of § 217.375.2 and .3. However, the record fails to resolve by unassailable

proof every genuine issue of material fact. A controversy exists as to whether the MSP officials conducted hearings complying with § 217.375.2 and .3 and the due process standards set forth in *Hewitt.*

The documents attached to the warden's affidavit provide our only source of information regarding the hearings conducted. We find these documents to be admissible through the business records exception to the hearsay rule. Section 490.680 RSMo 1986; *see Allen v. St. Luke's Hospital of Kansas City,* 532 S.W.2d 505, 508 (Mo.App. 1975). Four documents indicate that the prison officials reviewed Howard's confinement. Three documents are printed detention order forms. The lower portion of each detention order bears the caption "72 Hour Review". Each form is signed and dated and states "On the basis of a review of the current behavior and attitude of the above-named inmate, his confinement in detention is ordered: Continued". The fourth document is entitled "Special Management Facility Classification Committee Action Sheet". It reveals that three committee members met on December 30, 1985, to consider Howard's assignment to the Special Management Facility. Spaces on the action sheet for "Decision of Committee" and "rationale" remain blank. However, a fifth document reveals that the Committee assigned Howard to the Special Management Facility on December 30, 1985, "for safety and security of the institution". We find no reference in the record to a hearing held on February 13, 1986, which the trial court mentioned in its order of dismissal. While the documents indicate that the MSP officials conducted periodic reviews of Howard's confinement, they fail to provide unassailable proof showing compliance with § 217.375 and the Due Process Clause. We cannot determine whether the reviews were held timely, whether the decision makers considered the evidence supporting Howard's confinement, or whether Howard had an opportunity to submit a statement.

On the basis on the record, we find that genuine issues of material fact still exist, rendering summary judgment inappropriate on the basis of the record before the trial court. Because Howard's first point is decisive, we will not address his second point. We emphasize that, in our decision today, we determine only that summary judgment is incorrect at this point in this case; we do not intimate any view on the factual issues.

Accordingly, we reverse the trial court's judgment of dismissal and remand the cause for further proceedings.