Craig JONES; Danny Madison; James Moore; Lawrence Payne; Aaron Phillips; Macy Jones; and Anthony McGee, Plaintiffs–Appellees,

v.

Melvin COONCE; Ruth Eddy; Thom Fischer; Harry Lloyd; William Roundtree; John Sydow; William Tinsman; Bill Armontrout; J.H. Holtmeyer; and David Wallace, Defendants–Appellants.

No. 92–3091.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1993.

Decided Oct. 14, 1993.

Rehearing Denied Nov. 15, 1993.

---

1360

Greg Allen Perry, Jefferson City, MO, argued (William L. Webster and Greg A. Perry, on the brief), of defendants-appellants.

Sarah Alderks Brown, Overland Park, KS, argued, for plaintiffs-appellees.

Before JOHN R. GIBSON, LOKEN, and HANSEN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Appellants Melvin Coonce, Ruth Eddy, Thom Fischer, Harry Lloyd, William Roundtree, John Sydow, William Tinsman, Bill Armontrout, J.H. Holtmeyer, and David Wallace, prison officials at the Missouri State Penitentiary, appeal from the district court's denial of their request for summary judgment and grant of partial summary judgment in favor of inmates Craig Jones, Danny Madison, James Moore, Lawrence Payne, Aaron Phillips, Macy Jones, and Anthony McGee on their 42 U.S.C. § 1983 (1988) suit. Among other things, the inmates alleged that the officials violated their Fourteenth Amendment due process rights by failing to provide, within a reasonable time, an informal, nonadversary review of the evidence supporting their placement in administrative segrega-

tion. The officials argue that they are protected by qualified immunity. They question whether the inmates had a liberty interest in remaining out of administrative segregation, and contend that the inmates received due process. We affirm in part, reverse in part, and remand for further proceedings.

On December 14, 1988, Coonce (a prison investigator) received a letter stating that the appellees and others were planning to stab a guard and another inmate. After discussing the situation with Warden Armontrout, Coonce moved the appellees from "Housing Unit 1" to "Housing Unit 2B," where they were placed in cell detention pending further investigation.[1] That same day, Coonce interviewed Macy Jones, Moore, and Phillips about the incident.

On December 15, 1988, Coonce told Thom Fischer, the functional unit manager, that the appellees had been transferred to Unit 2B pending investigation. Fischer then "walked by" each inmate's cell to explain the reason for the segregation. Fischer continued this "walk-by" practice each day the appellees were housed in Unit 2B.

On December 19, 1988, Coonce interviewed Craig Jones and Payne, but never interviewed Madison or McGee. On December 20, 1988, Coonce completed his investigation, and told Fischer that none of the inmates would be charged with a conduct or rule violation. According to the prison's records, the officials released Macy and Craig Jones from cell detention on December 23, 1988, released Madison on December 27, 1988, released Phillips on December 29, 1988, and released Payne, Moore,[2] and McGee on January 13, 1989.

The inmates brought suit under section 1983, alleging that the prison officials placed them in administrative segregation without due process of law, denied them access to the law library and courts, and kept them from participating in religious services, educational programs, and work opportunities. The inmates also claim that the prison officials' actions were racially motivated in violation of their right to equal protection, and McGee and Phillips allege that the prison officials failed to protect them from assault by other inmates.

The inmates moved for partial summary judgment as to their due process claims and the officials moved for summary judgment on all claims. The district court was persuaded by the inmates' argument based on the officials' failure to conduct an informal, nonadversary hearing within a reasonable time after placing the inmates in administrative segregation, in violation of the inmates' Fourteenth Amendment due process rights. The district court held that neither Coonce's investigational interviews nor Fischer's "walk-bys" constituted a "review" or complied with the prison's policies. Thus, some of the inmates were held for nine days and others were held for as many as thirty days without a proper review. Holding that *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), clearly established the law in this area, the court rejected the officials' qualified immunity argument as to the due process violation. The court then granted partial summary judgment in favor of the inmates, denied the officials' request for summary judgment, and certified the case for interlocutory appeal.

## I.

The prison officials argue that the district court erred in granting partial summary judgment in favor of the inmates on their due process claim. The officials claim they were entitled to qualified immunity and, regardless, they did not violate the inmates' due process rights, for the inmates received an informal, nonadversary review of the infor-

---

1. McGee did not reside in the Missouri prison from December 5, 1988 to January 25, 1989. United States Marshals had McGee in custody so he could testify in a court proceeding. Although McGee was not present, he was placed on "detention status."

2. Moore's records do not indicate exactly when his release occurred—they show that he was transferred to Unit 2B on December 14, 1988, but do not show another move until April 11, 1989. Nevertheless, we assume for purposes of this appeal that he was released on January 13, 1989. This is consistent with the inmate's amended complaint.

mation supporting their confinement within a reasonable time of their confinement.

■ We review a district court's grant or denial of summary judgment de novo. *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992). We examine the record in the light most favorable to the nonmovant, and affirm a grant of summary judgment when there is no dispute as to any genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

■ Prison officials may generally rely on the defense of qualified immunity to protect them from liability for civil damages. *Brown v. Frey,* 889 F.2d 159, 165 (8th Cir. 1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990). In determining whether the officials are protected by qualified immunity, we must first decide the essentially legal question of whether the acts the inmates allege violated clearly established law, and then we must decide whether the inmates have produced evidence sufficient to create a genuine issue as to whether the officials committed those acts. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The test focuses on the objective legal reasonableness of an official's acts, and the qualified immunity defense fails if the official violates a clearly established right because "a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

### A.

We held in 1989 (after the acts in this case had taken place) that Missouri prison inmates placed in administrative segregation have a right to an informal hearing within a reasonable time. In *Brown v. Frey,* we held that Missouri statute section 217.375:

raises a protected liberty interest because the requirement of a hearing within three

working days after confinement in administrative segregation is explicit and mandatory. As a result, ... [inmates have] a clear constitutional right of which defendants should have been aware to an informal hearing within a *reasonable time* following confinement.

889 F.2d at 166 (emphasis added);[3] *see also Coffman v. Trickey,* 884 F.2d 1057 (8th Cir. 1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990). Missouri case law dating from 1987, before the acts in issue here, also established that section 217.375 created a protected liberty interest in remaining in the general population. *Howard v. Armontrout,* 729 S.W.2d 547, 549 (Mo.App. 1987).

■ The appellants argue that because neither *Brown* nor *Coffman* had been decided when the incidents in this case occurred and because a 1987 unpublished Western District of Missouri case reached a result contrary to *Howard,* the law was not clearly established. As we explained in *Hall v. Lombardi,* 996 F.2d 954, 958 (8th Cir.1993), qualified immunity may not be available even though the very act in question has not specifically been held unlawful. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

We have taken a broad view of what constitutes "clearly established law" for the purpose of qualified immunity, requiring some but not precise factual correspondence with precedents and demanding that officials apply "general, well-developed legal principles." It is only necessary that the unlawfulness of the official's act is apparent in view of preexisting law.

*Hall,* 996 F.2d at 958 (citations omitted).

■ Although we did not specifically hold that section 217.375 created a liberty interest until after the events in this case occurred, a reasonable official would have known that a liberty interest existed. In *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1982), the Supreme Court dealt

---

3. We did not decide in *Brown* whether the prison officials' failure to provide a nonadversary hearing within fifteen days was unreasonable because the inmate in *Brown* argued only that his right to a hearing "within three days" had been violated.

889 F.2d at 166 & n. 12. As no constitutional right to a hearing "within three days" existed, we determined that the prison officials were immune from liability. *Id.*

with a similar situation and held that the prison officials were obligated to engage in an informal, nonadversary review of the information supporting the inmate's administrative confinement (including whatever statement the inmate wished to submit) within a reasonable time after confining him to administrative segregation. In so holding, the Supreme Court recognized that placing an inmate in administrative segregation is a discretionary act, and unless the State has restricted that discretion, no liberty interest arises. *Id.* at 471–72, 103 S.Ct. at 871. The Court then looked to the Pennsylvania statutes and prison regulations and found that the State had restricted the prison officials' discretion because the statutes and regulations contained "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must,' be employed, ... and that administrative segregation will not occur absent specified substantive predicates—viz., 'the need for control,' or 'the threat of a serious disturbance.'" *Id.;* *see generally Hall,* 996 F.2d at 958–59 (listing many other Supreme Court and Eighth Circuit cases decided before 1988 that should have put the Missouri prison officials on notice that statutes and prison regulations of this nature create a liberty interest).

As the Missouri Court of Appeals recognized in *Howard v. Armontrout,* 729 S.W.2d 547 (Mo.Ct.App.1987), section 217.375 states that administrative segregation will not occur absent "an immediate security risk" or other circumstances, and includes language of an unmistakably mandatory character—"shall." A reasonable official would have understood that section 217.375 created a liberty interest in the right to an informal, nonadversary review within a reasonable time.[4] *See Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874; *Brown,* 889 F.2d at 166.

The question remains whether it was clearly established in December 1988 and January 1989 that the various periods that elapsed without the inmates receiving a hearing were beyond a "reasonable time." We held recently, after briefing and argu-ment in this appeal, that it was *not* clearly established in 1986 that a fifteen day delay was unreasonable. *Swenson v. Trickey,* 995 F.2d 132, 135 (8th Cir.1993). Since the inmates point to no developments clarifying the definition of "reasonable time" between 1986 and the time of the events in this case, *Swenson* requires that we hold the officials' detention of Macy and Craig Jones for nine days, Madison for thirteen days, and Phillips for fifteen days did not violate the inmates' clearly established constitutional rights. On the record before us, however, it should have been clear that thirty days was not a reasonable time for detention of Payne, Moore and McGee without an informal non-adversary hearing. We thus hold that the officials are entitled to qualified immunity on the due process claims of Craig Jones, Macy Jones, Madison and Phillips, but not on the claims of Payne, Moore and McGee.

## B.

The officials argue that Coonce's interviews and Fischer's "walk-bys" satisfied due process. In *Hewitt,* the Supreme Court held that an informal, nonadversary evidentiary review would be sufficient to evaluate the decision that the inmate represented a security threat and the decision to confine the inmate to administrative segregation pending the outcome of an investigation. 459 U.S. at 476, 103 S.Ct. at 874. The Court explained that the "inmate must merely receive some notice of the charges against him and an opportunity to present his views *to the prison official charged with deciding whether to transfer him* to administrative segregation." *Id.* (emphasis added). The Court stated that "[s]o long as this occurs, and the decision-maker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." *Id.* The Court then found that the procedures in *Hewitt* satisfied due process because the inmate had received notice of the charges the day after his transfer to administrative segregation, a "Hearing Committee" reviewed the existing evidence against him five days after his

---

4. Indeed, during his deposition, Coonce demonstrated that he knew the inmates were "entitled to a review under due process" every 72 hours.

transfer, and the inmate admitted that he had an opportunity to have his version reported as part of the record. *Id.* at 477, 103 S.Ct. at 874. Although the Court held that the inmate had received all the process that was due, it also clarified that administrative segregation must not be used as a pretext for indefinite confinement. *Id.* at 477–78 & n. 9, 103 S.Ct. at 874–75 & n. 9.

▉ At his deposition, Coonce stated that the inmates were entitled to review every 72 hours, but that such reviews were the responsibility of the team classification unit, and were thus "totally out of [his] realm" of control. Thus, Coonce admittedly did not review the decision to place the inmates in administrative segregation. Instead, Coonce conducted an investigation[5] for his supervisors, who would determine whether further steps—bringing criminal charges or issuing a conduct violation—were necessary. Coonce detailed his investigation in a report[6] to Armontrout and made recommendations regarding the action that should be taken as to each inmate allegedly involved in the situation. As Coonce himself was not the designated decisionmaker, his interviews did not satisfy the inmates' right to an informal interview.

▉ Similarly, we cannot say that Fischer's "walk-bys" met the review requirements. In his deposition, Fischer described the walk-bys:

A. ... And so we just simply go around, check on the inmates, tell them, you know, their status, like the investigation is still going on, maybe we'll know something in a few days, you know, like that.

Q. So every three days essentially you have to tell them something?

A. Something.

Q. Okay, the review itself, is it just a casual walk by the cell?

A. Right ...

Q. "Nothing new. We'll let you know when there is something"?

A. ... right.

Q. Okay. How long can investigations go on like this?

A. It's indeterminate. Indeterminate, simply based on the investigator himself. Fischer did not mention giving the inmates an opportunity to present their views, and nothing in the record indicates that he gave the inmates a chance to state their side of the incident under investigation. Therefore, Fischers' walk-bys do not constitute the constitutionally required informal hearing.

Thus, the inmates held thirty days have presented a genuine issue of fact as to whether the officials violated their clearly established due process rights. The inmates' assertion of due process violations therefore cannot be cut off by the officials' claim of qualified immunity.

**II.**

We now turn to the entry of judgment on the merits in favor of Payne, Moore and McGee. Though our discussion above establishes that the officials are not entitled to summary judgment on these three inmates' claims, we cannot say that the district court's entry of partial summary judgment in favor of these inmates is appropriate. The district court did not explore whether each defendant committed acts rendering him liable to each plaintiff. The failure is especially crucial in McGee's case. From December 5, 1988, to January 25, 1989, McGee was not even at the prison; he was in the custody of federal marshals. The amended complaint indicates that "upon his return ... [he] was taken to PCU–2 and placed in segregation," but the complaint also states that he was released from administrative segregation on January 13, 1989 (twelve days before he returned to the prison). With McGee's absence, we cannot see how the defendants could have denied him due process. We therefore reverse the district court's grant of partial summary

---

5. Coonce did not even interview Madison or McGee.

6. As the district court observed, Coonce's report is dated December 14, 1988, but refers to interviews on December 19 and 20. Because he submitted no later reports, we assume this was his final report.

judgment in favor of Payne, Moore and McGee, grant the officials' request for summary judgment as to McGee's due process claims, and remand for further consideration of Payne and Moore's due process claims.

### III.

The prison officials argue that the district court erred in denying their request for summary judgment as to the inmates' other complaints. The officials assert that they were entitled to summary judgment on the merits and on the basis of qualified immunity.

 A district court order holding that government defendants are not entitled to qualified immunity is immediately appealable as a final order under 28 U.S.C. § 1291 (1988). *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). In addition, we may consider the merits to the extent there is a closely related question of law. *Drake v. Scott,* 812 F.2d 395, 397–99 (8th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). The district court's order in this case, however, addressed only the inmates' due process claims. Although the district court listed all the inmates' claims as part of its recitation of the facts, it did not discuss them in its opinion. The district court did not address the merits of the additional claims or the officials' qualified immunity defense as it related to those claims. In fact the district court merely ordered "that defendants' motion for summary judgment is denied."

When the order appealed from does not decide the issue of qualified immunity, this court lacks jurisdiction to decide it. *Moutray v. Butts,* 985 F.2d 426, 427 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 69, 126 L.Ed.2d 38 (1993); *Shannon v. White,* 992 F.2d 791, 792–93 (8th Cir.1993). In *Moutray,* we held that we lacked jurisdiction because the district court's order dealt with summary judgment only as to the merits and did not discuss qualified immunity. 985 F.2d at 427. Similarly, in *Shannon,* we held that we lacked jurisdiction where the district court adopted two magistrate judge's reports without comment and neither report discussed qualified immunity. 992 F.2d at

792–93. Although we determined that we had jurisdiction in *Krueger v. Fuhr,* 991 F.2d 435, 438 n. 2 (8th Cir.1993), the district court there denied the motion for summary judgment, but at least noted that the qualified immunity defense had been argued. Here, the district court did not discuss the qualified immunity defense as to the inmates' additional claims. As there is no ruling as to qualified immunity on these issues, we have no basis for reaching the merits. We must, therefore, remand to the district court for further proceedings.

On remand, we encourage the district court to examine each of the claims carefully. We suggest that the district court determine who is involved in each claim, to what extent, and whether those officials who were involved are entitled to qualified immunity or summary judgment on the merits. *See Krueger,* 991 F.2d at 438 n. 2.

Accordingly, we reverse the district court's denial of summary judgment for the defendants on the due process claims of Macy Jones, Craig Jones, Madison, Phillips and McGee. We reverse the district court's entry of partial summary judgment in favor of Payne and Moore on their due process claims and remand for further consideration. Finally, we remand the inmates' various other claims to the district court for further proceedings.