Roosevelt HAYES, also known as Amir Saafir, Appellant,

v.

R. LONG, Captain, Cummins Unit, Arkansas Department of Correction; J. Powell, Supervisor, Cummins Unit, Arkansas Department of Correction; R. Coker, Food Production Manager, Cummins Unit, Arkansas Department of Correction; James A. Byers, Disciplinary Chairman, Cummins Unit, Arkansas Department of Correction, Appellees.

No. 94–1733.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1995.

Decided Dec. 7, 1995.

Rehearing Denied Jan. 12, 1996.

Michael S. Moore, argued, Little Rock, AR, for appellant.

David R. Raupp, Asst. Atty. Gen., argued, Little Rock, AR, for appellees.

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Roosevelt Hayes appeals from a final order entered in the United States District Court for the Eastern District of Arkansas granting summary judgment to Robert Long, Jay Powell, Ronald Coker, and James Byers (collectively defendants), who are officials at the Cummins Unit of the Arkansas Department of Correction. Hayes brought this action under 42 U.S.C. § 1983, claiming that defendants had deprived him of his First Amendment right to practice his religion by requiring him to handle pork. The district court held that defendants were entitled to quali-

fied immunity. *Hayes v. Long,* No. # 94–1733EAPB (E.D.Ark. Mar. 7, 1994). For reversal, Hayes argues the district court erred in granting qualified immunity to defendants. For the reasons discussed below, we reverse the order of the district court and remand the case to the district court for further proceedings consistent with this opinion.

## I.

Hayes, a state prison inmate, was transferred from the Tucker Maximum Security Unit to the Cummins Unit in early 1992. His first assignment in the Cummins Unit involved kitchen detail, and he was supervised by Powell, Long, and Coker.[1] The Cummins Unit had an unwritten policy of not requiring Muslim inmates to handle pork in the process of food preparation. Accordingly, Muslim inmates who stated that their religious beliefs prohibited the handling of pork were assigned to other tasks in the dining hall. When Hayes first reported for kitchen duty, he informed Powell and Long that his Muslim faith prohibited him from handling pork products. Long then authorized the reassignment of Hayes from the kitchen to the east floor of the dining area.

On February 15, 1992, Coker approached Hayes and ordered him to help prepare pork chops. When Hayes told Coker that his Muslim beliefs forbade the handling of pork, Coker replied that he did not believe Hayes was a Muslim. Hayes requested that they settle that matter by going to the yard desk to speak with the prison officials there. Coker, however, insisted that Hayes immediately comply with the order. When Hayes refused to do so, Coker issued a disciplinary violation notice to him. Hayes showed the disciplinary violation notice to Powell and Long, but each refused to intervene on his behalf. Hayes was later found guilty of the disciplin-

ary violation by Byers, a disciplinary hearing officer, after Byers obtained a report from the prison chaplain stating that there was no record of Hayes's religious preference or attendance at Islamic services in 1992. As a result, Hayes's inmate status was reduced from Class I to II, and he was demoted in work assignment.

In June 1992, Hayes filed a *pro se* complaint against Coker, Long, Powell, and Byers.[2] After trial, at which Hayes was represented by appointed counsel, the district court held that Coker had violated Hayes' First Amendment rights when he disregarded Hayes's assertion of his religion and ordered him to help prepare pork. *Hayes v. Long,* No. 94–1733EAPB (E.D.Ark. March 7, 1994). Nevertheless, the district court also held that Coker, Long, and Powell were entitled to qualified immunity, thereby precluding Hayes from recovering damages. *Id.* Hayes then timely filed a *pro se* notice of appeal. After appellees responded, asserting the defense of qualified immunity, this Court again appointed counsel for Hayes and directed that supplemental briefs be filed on the issue of qualified immunity.

## II.

Generally, prison officials may rely on the defense of qualified immunity to protect them from liability for civil damages. *Henderson v. Baird,* 29 F.3d 464, 467 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995); *Mahers v. Harper,* 12 F.3d 783, 785 (8th Cir.1993); *Jones v. Coonce,* 7 F.3d 1359, 1362 (8th Cir. 1993) (*Jones*). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 349, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986) (*Malley*). As explained by the Supreme Court, govern-

---

1. Long at that time served as Food Production Manager 2, and he supervised Coker and Powell, each of whom held the position Food Production Supervisor 1.

2. The magistrate judge granted hearing officer Byers's motion for summary judgment, concluding that the claim against Byers was essentially a challenge to the evidentiary sufficiency of the disciplinary decision and that the decision was

supported by "some evidence." *See Superintendent v. Hill,* 472 U.S. 445, 453–56, 105 S.Ct. 2768, 2772–75, 86 L.Ed.2d 356 (1985). We uphold this factual finding of the magistrate judge as not clearly erroneous; thus, our consideration of the sole issue on appeal—whether the district court erred in granting summary judgment in favor of Long, Powell, and Coker—does not involve Byers.

ment officials performing discretionary functions are entitled to qualified immunity unless their challenged conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known at the time the action occurred." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) *(Harlow).* In order for a right to be clearly established, its contours "must be sufficiently clear that a reasonable person would understand that what he [or she] is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) *(Anderson).* Objective legal reasonableness is the touch-stone of this determination. *Id.* at 639, 107 S.Ct. at 3039. Although it is not necessary for the very act in question to have been held unlawful for qualified immunity to attach, the unlawfulness of the act must be reasonably apparent in the light of preexisting law. *See id.* at 640, 107 S.Ct. at 3039.

On appeal, Hayes argues defendants are not entitled to qualified immunity, because in February 1992, Muslim inmates had a "clearly established right" in this circuit not to handle pork. Hayes further maintains that even if no such right was clearly established at that time, defendants actually knew that there was a longstanding policy at the Cummins Unit not to require Muslim inmates to handle pork.

Defendants contend they should not be held liable under 42 U.S.C. § 1983 because they did not know Hayes was a Muslim at the time of the events in question. Alternatively, they argue the information available to them at that time reasonably led them to believe that Hayes had no clearly established right not to handle pork because of his Muslim beliefs. Thus, they maintain that the district court did not err in granting them qualified immunity.

■■■ The qualified immunity analysis is two-fold. We must first determine whether the plaintiff has alleged a violation of a constitutional right and next determine whether that constitutional right was clearly established at the time that the officials acted. *Munz. v. Michael,* 28 F.3d 795, 799 (8th Cir.1994) *(Munz)* (citing *Siegert v. Gilley,* 500

U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) *(Siegert)).* The initial inquiry involves determining whether the facts alleged by the plaintiff state a claim for denial of a constitutional right. *Siegert,* 500 U.S. at 233–34, 111 S.Ct. at 1793. Specifically, in making a free exercise claim under 42 U.S.C. § 1983, the inmate must establish both the existence of a sincerely held religious belief and the infringement upon that belief by the challenged act or regulation. *See Iron Eyes v. Henry,* 907 F.2d 810, 813 (8th Cir.1990); *Hill v. Blackwell,* 774 F.2d 338, 342–43 (8th Cir.1985) *(Hill).* Defendants challenge Hayes' assertion of a sincerely held religious belief. They maintain that, because they did not know Hayes was a Muslim when he was disciplined, they were not aware that his religion required him to avoid contact with pork. In other words, they argue that Hayes failed to establish the existence of his sincerely held belief at trial. The district court, however, concluded that "Coker simply disregarded plaintiff's assertion of his religion." Slip op. at 3. Because the district court's determination is factual in nature, it is subject to the clearly erroneous standard of review. *See Butler–Bey v. Frey,* 811 F.2d 449, 451 (8th Cir.1987) *(Butler–Bey).* From our review of the record, this determination is not clearly erroneous.

■■■ The question thus becomes whether Muslim inmates had a clearly established right not to handle pork at the time of the incident in February 1992. This court has taken a broad view of what constitutes "clearly established law" for the purposes of a qualified immunity inquiry. *Boswell v. Sherburne County,* 849 F.2d 1117, 1121 (8th Cir.1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989) *(Boswell ).* More particularly, we have made the following observation concerning the analysis of "clearly established law":

> In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, nor does the precise action or omission in question need to have been held unlawful. In the absence of binding precedent, a court should look to all available decisional law including decisions of

state courts, other circuits and district courts....

*Norfleet v. Arkansas Dep't. of Human Services*, 989 F.2d 289, 291 (8th Cir.1993); *see also Jones*, 7 F.3d at 1362 (in order for law to be clearly established for qualified immunity purposes, it is only necessary that unlawfulness of official's act be apparent in view of preexisting law). We conclude that the right of Muslim inmates to refrain from handling pork has been clearly established in *Finney v. Hutto*, 410 F.Supp. 251, 270 (E.D.Ark. 1976) (*Finney*), *aff'd on other grounds*, 548 F.2d 740 (8th Cir.1977), *aff'd*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). In *Finney*, the district court considered several individual and class actions brought by Arkansas inmates against state prison officials under 42 U.S.C. § 1983 for alleged violations of their constitutional rights. *See Finney*, 410 F.Supp. at 253. One of the claims raised by Muslim inmates alleged that the prison officials had unduly restricted the free exercise of their religion by, *inter alia*, serving pork and other dietary items cooked in pork grease. *Id.* at 269–70. The district court stated, "Muslims eschew the consumption of pork in any form; they are not permitted by their religion to eat pork, nor are they permitted to eat any food which has been cooked in pork grease or that has been contaminated otherwise by coming into contact with pork." *Id.* Thus, the district court in *Finney* enjoined the Arkansas Department of Corrections from "serving pork to Muslims against their will and from exposing them to food that has been contaminated by contact with

pork or pork grease or lard made from pork fat." *Id.*

In our view, it was clearly established after *Finney* that Muslim inmates have the right to avoid contact with pork or with any food that has been contaminated by pork. *See id.; accord Hunafa v. Murphy*, 907 F.2d 46, 47–48 (7th Cir.1990); *Kenner v. Phelps*, 605 F.2d 850, 850 (5th Cir.1979). Moreover, we conclude that a reasonable person would have been aware of this right and would have known that handling pork in the kitchen violated this right.[3] In light of the fact that *Finney* was decided by the Eastern District of Arkansas, the jurisdiction in which the present case arose, and involved the Arkansas Department of Correction, it seems particularly unreasonable that defendants were unaware of this right. Accordingly, we hold defendants are not entitled to qualified immunity.[4]

We hold the district court erred in granting summary judgment in favor of defendants. Accordingly, the order of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

---

**3.** The outcome might be different if Coker's demand that Hayes handle pork during kitchen duty bore a rational relationship to a legitimate penological objective. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352–53, 107 S.Ct. 2400, 2406–07, 96 L.Ed.2d 282 (1987) (state prison regulations precluding Muslim inmates from attending weekly religious service did not violate First Amendment Free Exercise Clause where regulations were reasonably related to legitimate rehabilitative and security concerns of prison); *Thomas v. Gunter*, 32 F.3d 1258, 1261 (8th Cir. 1994) (prison officials would not be entitled to qualified immunity for violating prisoner's rights to free exercise of religion unless rational relationship could be shown between legitimate penological interests and denial of access to prison sweat lodge for prayer); *Hill*, 774 F.2d at 344 (prison regulation prohibiting growing of beards

by prison inmates was reasonably justified by security concerns and thus did not violate free exercise rights of inmate whose Muslim religion practiced the wearing of facial hair). Defendants, however, have not attempted to demonstrate such a nexus between the requirement that Muslim inmates handle pork and a legitimate penological interest. Thus, we need not consider this issue on appeal.

**4.** Because we conclude that appellant had a clearly established right under *Finney* to refrain from handling pork, we need not reach the question whether any constitutionally protected interests were created by the unwritten policy in the Cummins Unit excusing Muslim inmates from kitchen duties which would involve contact with pork.