

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2006

# Williams v. Bitner

Precedential or Non-Precedential: Precedential

Docket No. 05-1930

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Williams v. Bitner" (2006). *2006 Decisions.* Paper 647.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/647

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1930

———

HENRY WILLIAMS,

Appellee,

v.

ROBERT S. BITNER; JAY STIDD; ROBERT W. MEYERS;
TERRY L. WHITMAN; ROBIN L. KERSTETTER;
GREGORY P. GAERTNER; FRANKLIN J. TENNIS;
GEORGE SNEDEKER; GARY EMEL; SCOTT WYLAND,

UNITED STATES OF AMERICA (Intervernor in District
Court)

Robert S. Bitner; Jay Stidd; Robert W. Meyers;
Terry L. Whitman; Robin L. Kerstetter; G.P. Gaertner;
F. J. Tennis; George Snedeker; Gary Emel; Scott Wayland,

Appellants.

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 01-cv-02271)
District Judge: Honorable Christopher C. Conner

———

Argued February 28, 2006

Before: SLOVITER and FUENTES, Circuit Judges, and

BRODY,[*] <u>District Judge</u>.

(Filed July 25, 2006)

Barbara Adams, General Counsel
  Commonwealth of Pennsylvania
Michael A. Farnan, Chief Counsel
Raymond W. Dorian, Assistant Counsel (Argued)
  Pennsylvania Department of Corrections
55 Utley Drive
P.O. Box 598
Camp Hill, PA 17011
     <u>Counsel for Appellants</u>

Michael Cooke (Argued)
Pennsylvania Institutional Law Project
924 Cherry Street
Philadelphia, PA 19107
     <u>Counsel for Appellee</u>

_____

OPINION OF THE COURT
_____


FUENTES, <u>Circuit Judge</u>.

Henry Williams, a Muslim inmate assigned to work as a cook in his prison's kitchen, was ordered to help prepare a meal that included pork. Williams refused, explaining that his religious beliefs prohibited him from handling pork. As a result, Williams was fired from his kitchen job, cited for misconduct, and punished accordingly. Williams brought this action against numerous prison officials, alleging violations of his rights under the First and Fourteenth Amendments and the Religious Land Use and

_____

[*]Honorable Anita B. Brody, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Institutionalized Persons Act. The District Court dismissed Williams's Fourteenth Amendment claim but refused to grant qualified immunity to the prison officials with respect to the remaining claims. We are asked to determine whether, for the purposes of qualified immunity, the conduct alleged by Williams constituted a violation of his "clearly established" rights. For the reasons that follow, we will affirm the District Court's denial of qualified immunity with respect to Williams's First Amendment claim.

## I. Background

Appellee Henry Williams ("Williams") is an inmate at the State Correctional Institution at Rockview ("SCI-Rockview"), a Pennsylvania corrections institution. Appellants (collectively, the "Prison Officials") are employees and officials of the Pennsylvania Department of Corrections ("DOC"), the majority of whom are or were employed at SCI-Rockview.

A. Factual Background[1]

Williams is a Muslim who believes that the Koran directs Muslims not to consume pork and to refrain from aiding others to consume pork in any circumstances. See The Koran, Part II, 70:173 n.210 ("He has forbidden you . . . the flesh of swine."). Williams further states that Islamic scholars endorse Chapter Eleven of Leviticus in the Old Testament, which prohibits adherents from handling swine. Williams has acted in accordance with this interpretation of his religion throughout his incarceration, and the Prison Officials do not challenge the sincerity of his religious beliefs.

The DOC requires able-bodied inmates to work when assigned to a job. SCI-Rockview officials assigned Williams to

---

[1]Because we are reviewing a claim of qualified immunity, we view the factual allegations in the light most favorable to the party claiming injury. See Saucier v. Katz, 533 U.S. 194, 201 (2001).

work as a cook in the prison kitchen, despite the fact that he neither applied for nor wanted that job. Upon receiving his work assignment, Williams expressed his concerns over possible contact with pork to the "head" inmate-cooks, who coordinated other inmates' daily responsibilities in the kitchen. Williams notified them that, as a practicing Muslim, he could not handle pork or assist in its preparation. They agreed to accommodate his concerns by transferring him to another assignment when pork was served for lunch. It is unclear from the record whether this accommodation was recognized by prison officials.

On Saturday, March 3, 2001, Williams began his shift as usual. He worked as a cook preparing hot cakes in the morning and later switched to another job in the kitchen when it was time to prepare roast pork for lunch. While lunch preparations were underway, defendant Scott Wyland ("Wyland"), one of SCI-Rockview's food service instructors, noticed that there was a shortage of available inmate-cooks. Although the lunch preparations would likely be finished in time for meal service, Wyland directed Williams to resume his position as cook and to help divide that day's pork rations.

Williams refused to follow Wyland's direction, citing his religious beliefs. Wyland reported Williams's refusal to defendant Gary Emel ("Emel"), the food service supervisor. Emel then approached Williams and ordered him to help ration the pork. Wyland indicated that Williams could wear gloves, an accommodation that other Muslim inmates had previously found acceptable. Williams again refused, stating that he would still be violating his faith by assisting others to consume pork. Emel fired Williams from his kitchen job and instructed Wyland to issue Williams a misconduct citation for failing to follow a direct order. Pursuant to SCI-Rockview policy, Wyland notified defendant George Snedeker ("Snedeker"), a prison captain, of the incident and Snedeker approved the misconduct citation.

On March 6, 2001, defendant Jay Stidd ("Stidd"), a corrections hearing examiner, conducted a disciplinary hearing. Prior to the hearing, Williams had submitted a written defense, in which he cited federal case law suggesting that prison officials

4

cannot force Muslim prison inmates to assist in the preparation of pork and requested that one of the prison's Muslim chaplains be called as a witness. Stidd declined Williams's request and found him guilty of refusing to obey an order. As a sanction, Williams was placed on "cell restriction," meaning that, for a period of thirty days, he could leave his cell only for daily meals and to attend weekly Muslim religious services.

Williams appealed Stidd's decision to SCI-Rockview's "Program Review Committee," which included as members defendants Robert L. Kerstetter, Gregory P. Gaertner, and Franklin J. Tennis. The Committee affirmed Stidd's determination in a decision drafted by defendant Terry L. Whitman, deputy superintendent of SCI-Rockview. The decision noted that the Committee had contacted a member of SCI-Rockview's chaplaincy who indicated that Islamic teachings can be interpreted to allow adherents to touch pork while wearing gloves.[2] Williams unsuccessfully appealed the Committee's decision to defendants Robert W. Myers, superintendent of SCI-Rockview, and Robert S. Bitner, the chief hearing examiner.

Williams suffered a number of consequences as a result of the misconduct citation. He served twenty-seven days of the thirty-day cell restriction sentence, during which time he missed all but one religious observance per week, as well as the annual Islamic festival of Eid at the end of Ramadan. Although Williams had access to his religious books as well as books from the prison law library, he was forced to miss his Arabic Studies classes, which prevented him from obtaining his certification in that subject. At the conclusion of his cell restriction, Williams was reassigned to serve as a janitor in the kitchen, a position that, at 19 cents per hour, provided half the compensation of his previous job as a cook. SCI-Rockview staff placed the misconduct citation in Williams's

---

[2]The chaplain contacted by the prison officials was not the one suggested by Williams. According to Williams, the prison chaplain he sought to call as a witness did not believe that the Muslim religion permitted adherents to handle pork at all, regardless of whether they wore gloves.

institutional disciplinary record, and raised his security classification from "low" to "medium."

B.    Procedural Background

In November 2001, Williams brought this action under 42 U.S.C. § 1983 for violations of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, and the First and Fourteenth Amendments to the United States Constitution. Williams seeks compensatory damages, lost wages, and injunctive relief in the form of expungement of the misconduct citation, reinstatement of his pre-misconduct pay level, and cessation of similar religious harassment.

The Prison Officials filed a motion to dismiss the amended complaint, which the District Court denied. Williams v. Bitner, 285 F. Supp. 2d 593 (M.D. Pa. 2003). At the conclusion of discovery, the Prison Officials moved for summary judgment, arguing that Williams had not put forward sufficient evidence to sustain his claims. The District Court granted in part and denied in part the summary judgment motion: the District Court dismissed Williams's claim that the Prison Officials deprived him of his right to due process under the Fourteenth Amendment, but held that Williams had offered sufficient evidence to establish a deprivation of his rights under the RLUIPA and the First Amendment. See Williams v. Bitner, 359 F. Supp. 2d 370 (M.D. Pa. 2005). In addition, the District Court held that the Prison Officials were not entitled to qualified immunity because Williams had adduced sufficient evidence for a jury to find that the Prison Officials violated a "clearly established" statutory or constitutional right.[3] The Prison Officials appealed.

**II. Jurisdiction and Standard of Review**

---

[3]The Prison Officials had previously sought qualified immunity at the motion-to-dismiss stage, which the District Court denied for substantially the same reasons.

6

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332. A district court's ruling denying qualified immunity is reviewable on appeal where the dispute does not turn upon "which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law." Johnson v. Jones, 515 U.S. 304, 311 (1995). Because the material facts here are not in dispute and the issues before this Court are purely legal, we have appellate jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's denial of qualified immunity. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

We exercise plenary review of orders rejecting qualified immunity at the summary judgment stage. See Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). We apply the same standard that district courts apply at summary judgment. See Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). Thus, we draw all reasonable inferences in favor of the non-moving party, and we will reverse a denial of summary judgment only when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Id. at 276-77 (quoting Fed. R. Civ. P. 56(c)).

### III. Discussion

The Prison Officials assert that the District Court erred by refusing to grant their summary judgment motion on the basis of qualified immunity with respect to Williams's First Amendment claim because the right asserted by Williams was not "clearly established" at the time of the incident. The Prison Officials also contend that they are entitled to qualified immunity from Williams's RLUIPA claim.

### A. Qualified Immunity

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his or her federal rights. However, when a public official's actions give rise to a § 1983 claim, the privilege of qualified immunity can serve as a shield from civil suit in certain circumstances. See Hunter v.

7

Bryant, 502 U.S. 224, 227 (1991). The primary purpose of affording public officials the privilege of qualified immunity "is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" Elder v. Holloway, 510 U.S. 510, 514 (1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)).

Qualified immunity shields state officials from suit where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. The Supreme Court, in Saucier v. Katz, explained the analytical process for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . .
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

533 U.S. 194, 201 (2001) (citation omitted).

Thus, the qualified immunity analysis requires a two-step inquiry. First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right. If so, the court must then determine whether the constitutional or statutory right allegedly violated by the defendant was "clearly established." If the court concludes that the defendant's conduct did violate a clearly established constitutional or statutory right, then it must deny the defendant the protection afforded by qualified immunity. See id.; Curley, 298 F.3d at 277.

8

As a general matter, a right is clearly established for purposes of qualified immunity when its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). To find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson v. Layne, 526 U.S. 603, 615 (1999). As the Supreme Court explained in Hope v. Pelzer, in some cases "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). Indeed, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Id.

B.    Williams's First Amendment Claim

The Prison Officials argue that the District Court erred when it held that they are not entitled to qualified immunity from Williams's First Amendment claim.[4] The Prison Officials do not challenge the District Court's ruling with respect to the first prong of the qualified immunity analysis—whether the Prison Officials' alleged conduct violated Williams's rights under the First Amendment.[5] They do, however, challenge the District Court's

---

[4] The District Court discussed whether the First Amendment right asserted by Williams was clearly established on two occasions: in its opinion denying the Prison Officials' motion to dismiss, and in its opinion denying in part the Prison Officials' motion for summary judgment. The District Court employed approximately the same analysis in each opinion.

[5] The Prison Officials state in their brief that they "will accept [the District Court's] finding [that Williams has established a First Amendment violation] for purposes of this argument." (Appellants' Br. at 11.) Counsel for the Prison Officials reaffirmed this position at oral argument. Notwithstanding the Prison Officials' position, by our decision today we conclude that, viewed

9

ruling as to the second prong of the qualified immunity analysis—whether the Prison Officials' alleged conduct violated a "clearly established" First Amendment right.

Neither the Supreme Court nor the Third Circuit has directly addressed whether requiring a Muslim inmate to handle pork violates his or her First Amendment right to free exercise of religion. As the District Court pointed out, however, "[t]he few courts to consider the precise question have uniformly held that prison officials must respect and accommodate, when practicable, a Muslim inmate's religious beliefs regarding prohibitions on the handling of pork." Williams, 359 F. Supp. 2d at 377. Specifically, the Fifth, Seventh, and Eighth Circuits, as well as a district court in the Eighth Circuit, have so held. See Hayes v. Long, 72 F.3d 70, 72-74 (8th Cir. 1995) (denying qualified immunity because Muslim inmates had a clearly established right not to be forced to handle pork); Kenner v. Phelps, 605 F.2d 850, 851 (5th Cir. 1979) (per curiam) (finding that Muslim inmates' claim that they were forced to handle pork stated a cause of action); Chapman v. Kleindienst, 507 F.2d 1246, 1251-52 (7th Cir. 1974) (finding that Muslim inmate's claim that he was forced to handle pork made out a prima facie First Amendment claim); Finney v. Hutto, 410 F. Supp. 251, 270 (E.D. Ark. 1976) (enjoining prison officials from exposing Muslim inmates to food contaminated by pork), aff'd on other grounds, 548 F.2d 740 (8th Cir. 1977), aff'd, 437 U.S. 678 (1978).

The District Court also observed correctly that "[d]ecisions from the Supreme Court and the Third Circuit Court of Appeals affirm [the principles that support Williams's First Amendment claim], albeit in different factual scenarios." Williams, 359 F. Supp. 2d at 377. For example, in Thomas v. Review Board, 450 U.S. 707, 717-18 (1981), and Sherbert v. Verner, 374 U.S. 398, 404-06 (1963), the Supreme Court explained that a burden on religious exercise is "substantial" and, therefore, impermissible when it influences an adherent to act in a way that violates his or

---

in the light most favorable to Williams, the evidence establishes a violation of Williams's First Amendment rights, thus satisfying the first prong of the qualified immunity analysis.

10

her sincerely held religious beliefs. Moreover, we have examined First Amendment claims based on the failure of prison officials to accommodate inmates' religion-based dietary restrictions.[6]  See DeHart v. Horn, 227 F.3d 47, 52 (3d Cir. 2000) (en banc) (holding that an inmate requesting a special diet on the basis of a sincerely held religious belief has "a constitutionally protected interest upon which the prison administration may not unreasonably infringe"); Johnson v. Horn, 150 F.3d 276, 283 (3d Cir. 1998), overruled in part by DeHart, 227 F.3d at 53-57.

On appeal, the Prison Officials contend that they are entitled to qualified immunity because, at the time of the incident, Williams did not have a clearly established First Amendment right not to be forced to handle pork. According to the Prison Officials, the right was not clearly established because neither the Third Circuit nor any district courts within the Third Circuit had expressly held that such a right exists, and there was a "split among the other Circuits concerning this issue." (Appellants' Br. at 12.)  Thus, the Prison Officials assert that, as in Doe v. Delie, 257 F.3d 309 (3d Cir. 2001), "the absence of binding precedent in this circuit, the doubts expressed by the most analogous appellate holding, together with the conflict among a handful of district court opinions, undermines any claim that the right was clearly established."  Id. at 321 (footnote omitted).

We do not find the Prison Officials' arguments persuasive. First, although the Third Circuit has not ruled on the specific right asserted by Williams, we have observed that "[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising."  Brown v. Muhlenberg Twp., 269 F.3d 205, 211-12 & n.4 (3d Cir. 2001) (denying qualified immunity despite absence of

_____

[6]In addition, as the District Court pointed out, district courts within the Third Circuit have recognized that Muslim inmates are entitled to a pork-free diet.  See Muslim v. Frame, 854 F. Supp. 1215, 1224 (E.D. Pa. 1994); Masjid Muhammad-D.C.C. v. Keve, 479 F. Supp. 1311, 1318 (D. Del. 1979).

11

Third Circuit precedent establishing the right asserted by plaintiff); see also Kopec v. Tate, 361 F.3d 772, 777-78 & n.6 (3d Cir. 2004) (finding right clearly established even though neither the Supreme Court nor the Third Circuit had ruled on the issue); Delie, 257 F.3d at 321 & n.11 (granting qualified immunity but observing that "[t]he absence of circuit precedent does not mean an official will always retain the immunity defense"). To that end, we routinely consider decisions by other Courts of Appeals as part of our "clearly established" analysis when we have not yet addressed the right asserted by the plaintiff. See, e.g., Kopec, 361 F.3d at 778; Atkinson v. Taylor, 316 F.3d 257, 263 (3d Cir. 2003); Brown, 269 F.3d at 211-12 n.4; cf. Johnson, 150 F.3d at 286 (choosing not to resolve the "difficult question" of whether and to what extent decisions from sister circuits may be considered in the qualified immunity analysis).[7]

Furthermore, the Prison Officials' characterization of other Courts of Appeals' rulings on this issue as "split" at the time of the incident is not accurate. As noted above, as of 2001, the only three Courts of Appeals to have considered the right asserted by Williams in a precedential opinion had held that prison officials violate Muslim inmates' First Amendment rights when they force the inmates to handle pork. See Hayes, 72 F.3d at 72-74; Kenner, 605 F.2d at 851; Chapman, 507 F.2d at 1251-52. In support of their contention that the circuits were divided, the Prison Officials point to the Sixth Circuit's rejection of a somewhat similar claim in Robinson v. Jordan, 900 F.2d 260 (table), 1990 WL 47551 (6th Cir. 1990) (unpublished opinion). But Robinson is an unpublished opinion that has little or no precedential value in the Sixth Circuit.

---

[7]In addition, although the Delie majority stated that district court opinions cannot establish the law of the circuit, it conceded that such opinions nonetheless may be relevant to the "clearly established" determination. See Delie, 257 F.3d at 321 & n.10 ("district court opinions do play a role in the qualified immunity analysis"); but cf. Brown, 269 F.3d at 212 n.4 (observing that Delie "holds only that conflicting and materially distinguishable district court decisions did not render a right clearly established in the Third Circuit").

12

See 6th Cir. R. 28(g). As a result, Robinson does not preclude a finding that the right asserted by Williams was clearly established.[8]

The Prison Officials also call our attention to two cases that the District Court did not reference in its analysis, neither of which is availing. In Grant v. Matthews, No. 89-3194, 1992 WL 160926 (D. Kan. June 12, 1992), a district court dismissed a § 1983 suit by a Rastafarian inmate who was disciplined after refusing to serve soup containing meat (even though he was supplied with plastic gloves), based on qualified immunity. Grant is of no help to the Prison Officials, however, because the district court there conducted its "clearly established" inquiry prior to, and without the benefit of, the Eighth Circuit's decision in Hayes, which found that a right identical to the one asserted by Williams was clearly established. The Prison Officials also cite the Tenth Circuit's decision in Searles v. Dechant, 393 F.3d 1126 (10th Cir. 2004), in which a Jewish inmate claimed that prison officials violated his First Amendment right to free exercise when they ordered him to work in a non-kosher kitchen. The Tenth Circuit dismissed most of the appeal as untimely, but in affirming the denial of the plaintiff's motion for reconsideration, the court held that, under its "extremely limited standard of review," it could not conclude that the district court improperly dismissed the plaintiff's First Amendment claim on summary judgment. Id. at 1132. Searles does not influence our analysis, however, because it was decided three years after the incident involving Williams. See Brosseau v. Haugen, 543 U.S. 194, 200 n.4 (2004) (per curiam) (noting that

---

[8]Even if our sister circuits had in fact split on the issue, we would not necessarily be prevented from finding that the right was clearly established. See Pro v. Donatucci, 81 F.3d 1283, 1292 (3d Cir. 1996) (finding that split between the Fifth and Fourth Circuits at the time of the defendant's actions did not preclude a finding that the right was clearly established); Bieregu v. Reno, 59 F.3d 1445, 1458-59 (3d Cir. 1995) (finding a right to be clearly established despite a circuit split, as long as "no gaping divide has emerged in the jurisprudence such that defendants could reasonably expect this circuit to rule" to the contrary), abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996).

the parties had pointed the Court to "a number of . . . cases . . . that postdate the conduct in question" and that "[t]hese decisions, of course, could not have given fair notice to [the state official] and are of no use in the clearly established inquiry").

Lastly, the Prison Officials maintain that the fact that Williams was offered gloves to wear while preparing the pork rations weighs against a finding that they violated a clearly established First Amendment right. We disagree. Williams claims that his religious beliefs prohibit him from handling pork regardless of whether he wears gloves, and the Prison Officials do not dispute the sincerity of his beliefs. Thus, the offer of gloves did not diminish any impingement on Williams's rights under the First Amendment.

In sum, we hold that the Prison Officials are not entitled to qualified immunity from Williams's First Amendment claim. Although we had not yet addressed the issue raised here at the time of the incident, the Fifth, Seventh, and Eighth Circuits had addressed First Amendment claims similar to Williams's and held that prison officials must respect and accommodate, when practicable, a Muslim inmate's religious beliefs regarding prohibitions on the handling of pork. Moreover, decisions from the Supreme Court and this Court support the principles underlying the right asserted by Williams. We therefore conclude that the state of the law at the time the violation occurred gave the Prison Officials "fair warning" that their alleged treatment of Williams was unconstitutional. Hope, 536 U.S. at 741. Accordingly, we will affirm the District Court's denial of qualified immunity with respect to Williams's First Amendment claim.

C.     Williams's RLUIPA Claim

The Prison Officials also argue that the District Court erred in denying qualified immunity with respect to Williams's RLUIPA claim. According to the Prison Officials, their alleged conduct could not have violated Williams's clearly established rights under RLUIPA because the statute was passed only about six months prior to the incident. Williams does not oppose the Prison Officials' qualified immunity claim with respect to RLUIPA, but

14

notes that it is irrelevant to his request for relief under the statute because he seeks only injunctive relief, not monetary damages.[9] In their reply brief, the Prison Officials withdraw their qualified immunity argument with respect to Williams's RLUIPA claim "[t]o the extent that Williams agrees to not seek any monetary damages under [RLUIPA]." (Appellants' Reply Br. at 8 n.1.) Accordingly, because the amended complaint seeks only injunctive relief under RLUIPA, we need not address the District Court's denial of qualified immunity with respect to Williams's RLUIPA claim.

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's denial of qualified immunity with respect to Williams's First Amendment claim and remand the case for proceedings consistent with this opinion.

---

[9]Williams's initial complaint sought both monetary damages and injunctive relief under the First Amendment and RLUIPA. Thereafter, Williams filed an amended complaint seeking both monetary damages and injunctive relief under the First Amendment, but only injunctive relief under RLUIPA.