Darryl WILLIAMS, Appellee,

v.

Paul DELO; Bill Hartley; Raphael Coad; Greg Dunn; Unknown Wells, Officer; Norma Lavrrar; Paul Stuart, Officer, Appellants.

No. 94–2413.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1994.

Decided March 7, 1995.

Paul Rauschenbach, Asst. Atty. Gen., St. Louis, MO, argued, for appellants.

Robert Wulff, St. Louis, MO., argued, for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

BOWMAN, Circuit Judge.

Darryl Williams, an inmate at the Potosi Correctional Center (PCC), brought this action under 42 U.S.C. § 1983 (1988) alleging that the conditions of his confinement in PCC's administrative segregation unit violated his Eighth Amendment right to be free from cruel and unusual punishment. The defendant prison officials, employees of the Missouri Department of Corrections, moved for summary judgment on the merits and on the basis of qualified immunity. The District Court denied the motion, and the prison officials appeal that interlocutory order. We reverse.

I.

We state the facts in the light most favorable to Williams, who opposed the defendants' motion for summary judgment. On April 29, 1990, Michelle Thomas, Williams's wife, visited Williams at PCC. When Thomas decided to leave, Williams prevented her from doing so by holding her wrist. Thomas sought assistance from Officer Bill Hartley. Hartley ordered Williams to step into the hallway, but Williams refused. In response to Hartley's call for assistance, Officer Dennis Wells arrived on the scene and asked Williams to leave the room. Still holding Thomas's wrist, Williams stood up, struck Thomas in the face, and attempted to choke her. Officer Hartley intervened to stop the beating, and Williams and Hartley fell to the floor. Hartley suffered a strained wrist. Hartley, Wells, and Officer Paul Stuart even-

tually restrained Williams and placed him in handcuffs. Based on reports of these events, shift supervisor Captain Norma Lavrrar decided that Williams posed a threat to the security of the institution and was a danger to himself and others. As a result, Lavrrar ordered Stuart and Hartley to place Williams into temporary administrative segregation on limited property status, that is, a strip cell.

Stuart and Hartley escorted Williams to the administrative segregation unit where Sergeant Greg Dunn informed Officer Raphael Coad that Williams was to be placed "on strip cell." Williams's Deposition at 21. Prior to placing Williams in his cell, Coad ordered Williams to remove his clothes. Williams twice refused, telling Coad that he would "beat his ass just like I just got done beating my wife's ass." Williams's Deposition at 26. After Coad threatened to summon help to forcibly remove Williams's clothes, Williams complied with the order. He was then placed in an administrative segregation cell without his clothes, and prison officials shut off the water to the cell.

The cell had a light, a toilet, and a sink, but the mattress had been removed. Williams was given three meals each day, each of which consisted of a cold sandwich, fruit, and milk (which Williams did not like to drink). Because the water was shut off, Williams could not flush the toilet or wash his hands. At various times Williams asked officials to turn on the water, and he requested a tooth brush, tooth paste, deodorant, soap, sheets, blankets, pillow cases, pillows, mattresses, his legal mail, and clothing, all of which prison officials refused to provide. For the most part, he does not remember to whom he made these requests except one request for water and hygiene items that he made to Officer Coad and two others that he made to Officer Scott Jarvis and an Officer Malone, neither of whom are parties to this lawsuit.

As shift supervisor, Captain Lavrrar had the authority to place Williams in a strip cell and the responsibility for deciding whether Williams would stay there during her shift. Lavrrar remained on duty until 3:30 p.m. April 29 and was also on duty between 7:30 a.m. and 3:30 p.m. April 30. Based on reports she received from other corrections officers, she decided to keep Williams in the strip cell throughout the time she was on duty. Williams remained there for four days.[1] Paul K. Delo, the superintendent of PCC, played no personal role in Williams's assignment to, or the duration of his stay in, temporary administrative segregation.

Williams was returned to the general prison population after another shift supervisor, who was not named as a defendant in this case, decided that Williams no longer posed a threat to institutional security. The record does not show that Williams sought treatment for any medical condition or injury resulting from his four days in the strip cell.

Williams alleges that the conditions he encountered while confined in the strip cell constituted cruel and unusual punishment because they resulted in "physical injury and substantial pain, misery, anguish and other similar harm." First Amended Complaint at 5, 6, 8, 9, 10, 11, and 13. In Counts I through VII of his complaint, Williams seeks money damages from Delo, Hartley, Wells, Stuart, Dunn, Lavrrar, and Coad. In Count VIII, Williams seeks an injunction against Superintendent Delo that would bar future confinement under similar conditions.

The prison officials moved for summary judgment on all counts, arguing that the conditions of Williams's confinement in the strip cell do not constitute cruel and unusual punishment or, alternatively, that they are entitled to qualified immunity with respect to Williams's damage claims because their treatment of Williams did not violate a clearly established Eighth Amendment right.

---

1. PCC records indicate that Williams was taken off limited property status May 2, 1990, after three days in temporary administrative segregation. When reviewing an order denying summary judgment, we view the facts in the light most favorable to the nonmoving party, Williams, and thus will assume he was in the strip cell for four days. *See Jones v. Coonce,* 7 F.3d 1359, 1362 (8th Cir.1993). In any event, we note that this factual dispute, while genuine, is not material to the determination of whether summary judgment should have been granted. *See* Fed. R.Civ.P. 56(c).

## II.

■ Initially, we note the basis for our jurisdiction over this interlocutory appeal. An order denying summary judgment ordinarily is not appealable. *Mahers v. Harper*, 12 F.3d 783, 785 (8th Cir.1993). The prison officials in this case, however, moved for summary judgment based in part on a claim of qualified immunity. Qualified immunity is an "immunity from suit rather than a mere defense to liability, and . . . is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), *quoted in Mahers*, 12 F.3d at 785. The District Court's rejection of the qualified immunity claim, though an interlocutory order, is thus an appealable "final decision" within the meaning of 28 U.S.C. § 1291 (1988). *See Mitchell*, 472 U.S. at 530, 105 S.Ct. at 2817; *Boyd v. Knox*, 47 F.3d 966, 967 (8th Cir.1995).

■ Qualified immunity, however, is not a complete defense to Williams's claims because it cannot serve as a defense to an equitable claim such as the claim for injunctive relief in this case. *See Tubbesing v. Arnold*, 742 F.2d 401, 403–04 (8th Cir.1984). To address Williams's claim for injunctive relief, we must address the merits of his lawsuit despite the interlocutory nature of this appeal. We have held that when this Court has jurisdiction to consider qualified immunity issues, we also have jurisdiction "to decide closely related issues of law." *Drake v. Scott*, 812 F.2d 395, 399 (8th Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *see also Jones v. Coonce*, 7 F.3d 1359, 1365 (8th Cir.1993) (holding that court of appeals may consider merits of denial of summary judgment to extent there is closely related question of law). The question of whether the conditions of the strip cell violate the Eighth Amendment is not identical to the question of qualified immunity. The two questions, however, are closely related, and we thus have jurisdiction to decide whether summary judgment should have been granted to Superintendent Delo on Williams's claim for injunctive relief.

We review the District Court's denial of summary judgment *de novo*, examining the record in the light most favorable to the party opposing summary judgment. *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir.1995). Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). No material factual disputes exist between the parties in this case. We therefore need only to decide whether the defendants are entitled to judgment as a matter of law.

### A.

■ We begin with the defendants' argument that they are entitled to summary judgment on the ground of qualified immunity. The conditions of PCC's temporary administrative segregation on limited property status certainly are not comfortable. But the Constitution "does not mandate comfortable prisons"; it prohibits "inhumane ones." *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (internal quotation marks omitted). To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety," meaning that the officials actually knew of and disregarded the risk. *Id.* at ——, ——, 114 S.Ct. at 1977, 1979 (internal quotation marks and citations omitted). Absent a showing that the prison officials consciously understood that prison conditions created such an excessive risk, the conditions are not a "punishment" within the meaning of the Eighth Amendment. *Id.* at ——, 114 S.Ct. at 1979.

■ Williams has failed to present any evidence tending to establish that the conditions in the strip cell denied him "the minimal civilized measure of life's necessities." Over the course of four days, Williams was given three meals a day, including liquid nourishment in the form of milk, and was sheltered from the elements. While he did

not have any clothing or bedding, we have held there is no absolute Eighth Amendment right not to be put in a cell without clothes or bedding. *Johnson v. Boreani,* 946 F.2d 67, 71 (8th Cir.1991). Nothing in the record indicates that Williams suffered any injuries or that his health was impaired as a result of his four-day confinement in the strip cell. At most, Williams's evidence shows only that he felt some discomfort. After the incident in the visiting room where he attacked his wife and refused to follow the orders of corrections officials, the facts of which Williams does not dispute, prison officials properly decided that he posed a risk to institutional security and was a danger to himself and others. Even after being handcuffed and taken to the administrative segregation housing unit, Williams remained belligerent and threatened to "beat [Officer Coad's] ass." In these circumstances, the deprivation of personal property serves the legitimate penological goals of preventing injury to the inmate, injury to corrections officials, and damage to the facility. *Cf. Bettis v. Delo,* 14 F.3d 22, 23 (8th Cir.1994) (upholding regulation prohibiting certain Native American religious items in administrative segregation as related to legitimate penological interest in security of institution); *Harris v. Bolin,* 950 F.2d 547, 549 (8th Cir.1991) (affirming district court that held regulations prohibiting sexually explicit materials in cells were related to legitimate penological interests in part because such material "often causes fights, increased sexual activity, and destruction of county property (when they are taped or otherwise affixed to the walls)").

Even assuming the existence of a sufficiently serious objective deprivation, Williams has not shown that any of the prison officials named as defendants in this case knew of and disregarded an excessive risk to his health or safety. Nothing in the record indicates Superintendent Delo had any personal knowledge of Williams's assignment to the strip cell or the conditions of his confinement once he got there. Officers Hartley, Stuart, and Wells did not have anything to do with Williams after subduing him in the visiting room and taking him to the administrative segregation unit on Captain Lavrrar's orders. The record does not even hint that they had any personal knowledge of the conditions of Williams's confinement. Sergeant Dunn and Officer Coad placed Williams in the strip cell, but no evidence indicates Dunn had any further involvement with Williams. Williams testified that he asked Officer Coad for water and hygiene items, but that testimony falls short of a showing that Officer Coad knew of and disregarded an excessive risk to Williams's health and safety. Captain Lavrrar knew what conditions were associated with the strip cell, but there is no evidence that she knew of Williams's complaints or of any excessive risk to his health and safety.

The decisions of this Court relied upon by Williams, *Maxwell v. Mason,* 668 F.2d 361, 363 (8th Cir.1981), and *Wycoff v. Brewer,* 572 F.2d 1260, 1263 n. 5 (8th Cir.1978), represent an earlier era of Eighth Amendment jurisprudence. Prior to the Supreme Court's decision in *Farmer v. Brennan,* we had held that the Eighth Amendment "is violated in strip cell cases only if, after viewing the totality of the circumstances, including the extent of plaintiff's injuries, the fact finder concludes that defendant's conduct 'was so inhumane, base, or barbaric so as to shock one's sensibilities.'" *Johnson,* 946 F.2d at 71 (quoting *Porth v. Farrier,* 934 F.2d 154, 157 (8th Cir.1991)). *Farmer* rejects that approach. *See Clark v. Armontrout,* 28 F.3d 71, 72 (8th Cir.1994) (per curiam) (noting that *Farmer* "clarified" subjective requirements of deliberate indifference standard). Whether the conduct of prison officials "shocks the conscience" of this Court is irrelevant. "[T]he objective standard of culpability is out," and the "subjective standard of culpability" is in. *Randle v. Parker,* 48 F.3d 301, 304 (8th Cir.1995). Prison officials do not violate the Eighth Amendment by placing a prisoner in a strip cell unless they deny the inmate "the minimal civilized measure of life's necessities," *Farmer,* —— U.S. at ——, 114 S.Ct. at 1977, and knowingly disregard an excessive risk to the inmate's health or safety created by such a deprivation, *id.* at ——, 114 S.Ct. at 1979.

The evidence Williams has produced, viewed in the light most favorable to him,

fails to make any showing (1) that he was denied "the minimal civilized measure of life's necessities" and (2) that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." Absent a showing of an objectively serious deprivation and subjective knowledge of an excessive risk on the part of prison officials, we cannot say that any of the defendants from whom Williams seeks damages violated a clearly established Eighth Amendment right. *See Farmer,* —— U.S. at ——, 114 S.Ct. at 1982. It follows that those defendants are entitled to summary judgment on the basis of qualified immunity. As noted above, qualified immunity is an immunity from suit. "Generally, prison officials may rely on the defense of qualified immunity to protect them from liability for civil damages" if their conduct does not violate clearly established rights that would have been known to a reasonable person in their position. *Mahers,* 12 F.3d at 785; *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). With respect to Williams's claim for damages, the defendants in this case are entitled to summary judgment on the basis of qualified immunity because they did not violate any clearly established Eighth Amendment right that would have been known to a reasonable person charged with responsibility for inmate control and prison safety.

### B.

■ We turn now to Superintendent Delo's argument that the District Court should have granted his motion for summary judgment on Williams's claim for an injunction that would bar Delo and his subordinates from again placing Williams in the same type of strip cell. As the conditions Williams encountered in temporary administrative segregation did not violate the Eighth Amendment, we conclude that summary judgment should have been granted to Delo on the merits of Williams's claim for injunctive relief.

To prevail on his claim for injunctive relief, Williams was required to show, among other things, that prison officials knowingly disregarded, were disregarding, and would continue to disregard "an objectively intolerable risk of harm" to his health or safety. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1983. We concluded in part II.A. of this opinion that Williams's evidence fails to create any genuine issue of material fact that, if resolved in his favor, would show a risk to his health or safety or a knowing disregard of such a risk by prison officials. As a matter of law, Williams's evidence not only fails to defeat the defendants' motion for summary judgment on the ground of qualified immunity but also fails to create a triable case on the merits of his Eighth Amendment claim for injunctive relief. Delo is therefore entitled to summary judgment on that claim.

### III.

For the reasons stated, the District Court's order denying summary judgment to the defendants is reversed. We remand to the District Court with instructions that summary judgment be entered in favor of the defendants and that the case be dismissed.