# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2749

_____

Kelvin Key,                 *
                                         *

        Plaintiff - Appellant,       *
                                           *

Raymond Marvin Mickelson, Jr.;   *
Gary Case; on their own behalf and   *
on behalf of others similarly situated,   *
                                           *

           Plaintiffs,             *

                                          *   Appeal from the United States
         v.                          *   District Court for the Northern
                                          *   District of Iowa.

James McKinney; John Ault;      *
Russell Behrends, C/O; Mayo, Captain,   *
                                          *

        Defendants - Appellees.    *

_____

Submitted: April 22, 1999
Filed: May 13, 1999

_____

Before McMILLIAN, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

While he was incarcerated in Anamosa State Penitentiary Kelvin Key was restrained in handcuffs and leg shackles for twenty-four hours for throwing water on a corrections officer. Key filed this action against Iowa prison officials under 42 U.S.C. § 1983, claiming that the restraint procedure violated his Eighth and

Fourteenth Amendment rights. After trial on a stipulated record the district court[1] ruled in favor of the defendants, and Key appeals from the judgment. We affirm.

After disturbances in Anamosa prison caused by inmates throwing food trays, feces, and other objects at corrections officers, Warden John Ault instituted a new restraint policy. Under the new policy inmates caught spitting, throwing objects, or starting a fire were to be placed in restraints for twenty-four hours. Notice of the new policy was given to inmates in those areas of the prison where the disorderly conduct had occurred.

The policy provided that corrections officers who observed inappropriate behavior were to contact the shift supervisor. The supervisor then decided whether or not to place an inmate in restraints. When the policy was first implemented, inmates were restrained by placing them in handcuffs which were then attached to a belly chain. The belly chain severely limited an inmate's movement, and a different mechanism was adopted after a restrained inmate had defecated on himself. The revised procedure connected an inmate's handcuffs by means of a loose chain to leg shackles. Although inmates did not have a full range of motion while connected to the leg shackles, they were generally able to take care of their basic bodily functions. Before being placed in restraints an inmate showered and was strip-searched. According to the policy a restrained inmate was checked by a nurse every eight hours and by a corrections officer every thirty minutes. During the period of restraint the inmate was given three meals of institutional food loaf, a concoction prepared by blending and cooking together all of the components of a meal.

Key was restrained for twenty-four hours after he threw water on a correction officer's leg while on a work detail outside of the prison. Key testified that he had not

---

[1]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa, with the consent of the parties.

received prior notice of the new policy and that he had no hearing before he was restrained. He claims he accidentally spilled water on the officer because he tripped, but the prison disciplinary committee, which met after Key had already been placed in restraints, found that he had only pretended to trip and that he intentionally threw the water.

Key testified that while restrained he had difficulty sleeping and taking care of his bodily functions and that the restraints were painful. He claimed that he was unable to cover himself with his blanket and that his requests to have his handcuffs loosened to relieve the pain were denied. He admitted he was "able to take care of bodily functions such as urinating," but said "it's hard," and indicated that he had urinated on himself and had not had a bowel movement because of the circumstances. He also complained that he was not able to have a shower for a day after being released.

Key, together with inmates Raymond Marvin Mickelson, Jr. and Gary Case, who had also been restrained under the new policy, filed this action seeking damages and injunctive relief. They claimed that the policy violated the Eighth Amendment prohibition against cruel and unusual punishment and the Fourteenth Amendment requirement of due process. In addition to Warden Ault the inmates sued James McKinney, former Deputy Director of the Iowa Department of Corrections; Russell Behrends, Security Director of Anamosa; and Curt Mayo, a Correctional Supervisor at Anamosa. The district court denied their motion for a preliminary injunction and eventually ruled for the defendants. It found that the restraint procedure was humiliating, degrading, and uncomfortable, but not painful, and that the policy was intended to manage behavior rather than to punish. It concluded that the restraint procedure did not violate the inmates' right to humane conditions of confinement and was not malicious and sadistic; it thus did not violate the Eighth Amendment. It also concluded that the inmates' due process claims failed because the restraint policy did not create liberty interests requiring any particular process.

Mickelson and Cash chose not to appeal, but Key did.[2] He claims that the district court erred in concluding that Anamosa's twenty-four hour restraint policy did not violate the Eighth Amendment prohibition on cruel and unusual punishment or the Fourteenth Amendment right to due process of law. The state prison officials urge affirmance on the grounds relied on by the district court and also raise qualified immunity as a defense. We review the district court's factual findings after trial for clear error and its legal conclusions de novo. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

To make out an Eighth Amendment violation a plaintiff must show a serious deprivation of "the minimal civilized measure of life's necessities" and "offending conduct [that is] wanton." Wilson v. Seiter, 501 U.S. 294, 298, 302 (1991) (quotations omitted). A successful challenge to conditions of confinement requires a showing that prison officials have been deliberately indifferent to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A challenge to the way in which prison officials respond to a disturbance must show that they acted "maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320–21 (1986) (quotations omitted).

Key claims that the restraint procedure deprives inmates of the minimal civilized level of living. Restrictive prison measures more severe than this procedure have been found not to violate the Constitution, however. See O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 83 (8th Cir. 1996) (per curiam) ("inmate . . . deprived of underwear, blankets and mattress, exercise, and visits"); Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir. 1995) (inmate placed in "strip cell for two days without clothing,

---

[2]Key has meanwhile been transferred from Anamosa to the Iowa State Penitentiary, possibly making his claim for injunctive relief from the Anamosa policy moot. See, e.g., Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). Key's claim for monetary damages is not moot, however. See id.

bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing on him"); Williams v. Delo, 49 F.3d 442, 444 (8th Cir. 1995) (no clothes, running water, hygiene supplies, blanket, or mattress). In this case Key was in handcuffs and leg shackles for twenty-four hours after being accused of throwing liquid on a guard while on a work detail outside the prison. He was not deprived of bedding, food, or bathroom facilities, and he was checked on by a nurse and guard at regular intervals. While the shackles made it more difficult to sleep and relieve himself, he has not shown that he suffered a serious deprivation of "the minimal civilized measure of life's necessities."

The parties agree that the Farmer standard of culpability may be appropriately applied to this case, and the record shows that the prison officials were not deliberately indifferent to the health and safety of restrained inmates. In response to inmate difficulty in taking care of bodily functions, prison officials changed the method of restraint to allow inmates a greater range of movement. The condition of the restrained inmates was regularly checked, and the record contains examples of handcuffs being loosened and medical conditions being considered. This does not show deliberate indifference or wanton conduct. In light of this conclusion we need not consider the applicability of the Whitley standard which gives prison officials even more leeway when they are acting in response to disturbances within an institution. 475 U.S. at 320–21. Since Key has not shown a serious deprivation of "the minimal civilized measure of life's necessities" and "offending conduct [that is] wanton," his Eighth Amendment claim fails.

Key also argues that he has a liberty interest in not being shackled as punishment and that he was therefore entitled to receive notice and an opportunity to be heard before being restrained for twenty-four hours. A prison inmate only has a liberty interest in a condition of confinement if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). "Discipline by prison officials in response to a wide range

of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 485. In Sandin the Supreme Court held that thirty days of solitary confinement — as compared to administrative segregation, protective custody, and normal "lockdown time" for inmates in the general population — "did not work a major disruption in [the inmate's] environment." Id. at 486. Similarly, twenty-four hours in restraints — as compared to time prisoners can expect to be handcuffed and in leg shackles while serving their sentences — did not work a major disruption in Key's prison life. Consequently, Key had no liberty interest in not being restrained and therefore no right to due process before the restraints were imposed. Accordingly, he has not made out a Fourteenth Amendment due process claim.

For these reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-