**Ronald CAMP, Appellant,**

v.

**Edward BRENNAN, Superintendent; Brooks, Deputy Superintendent; Marquart, Deputy Superintendent; John Thompson, Sr.; Clark, Guard; Walmsley, Guard; Burton, Guard; Byerley, Guard; Jones, Guard; John Does.**

**No. 02–2003.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 20, 2002.

Decided Dec. 5, 2002.

Before BARRY and AMBRO, Circuit Judges and ACKERMAN,* District Judge.

## OPINION

AMBRO, Circuit Judge.

Ronald Camp filed a 42 U.S.C. § 1983 civil rights suit against guards and officials of the State Correctional Institute at Albion. Camp alleges that while an inmate there, he was subjected to excessive force during a cell extraction and then restrained in an observation cell while videotaped and without clothing, in violation of his rights under the Eighth and Fourteenth Amendments. The District Court granted the defendants' motion for summary judgment. Camp appeals the dismissal of his claims on grounds that genuine issues of material fact exist as to both. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

### I.

On October 6, 1996, a team of five to six guards forcibly extracted Camp from his cell, where he had been exhibiting erratic and threatening behavior. Camp was handcuffed and led by the guards toward an observation cell. As they were proceeding down a hallway and through an exit, Camp placed his foot against the door and pushed off. His doing so caused the group to stumble off balance, and Camp either fell or was pushed to the floor. While Camp was on the ground, one of the officers applied an EBID (Electronic Bar-

---

* Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

ring Immobilization Device), or stun gun, to Camp at least once. The disturbance in the doorway lasted less than twenty seconds, and was videotaped in its entirety.

Once the guards regained control of Camp, they carried him to an observation cell where he was strip searched and, while still naked, placed on a bed and put into a four points restraint, i.e., each limb was strapped down. A blanket was draped over him, but at some point it either was removed or fell off. Camp says that he was left in this state—tied down, without clothing or food—for two days.[1] These events also were videotaped. The prison officials responsible for observing Camp included a female.

## II.

We exercise plenary review over a grant of summary judgment. *Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 414 (3d Cir. 1999). To determine whether the actions of correctional officers constituted excessive force in violation of the Eighth Amendment, we look to the following factors:

> (1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir.2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). The central question in such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

■ Examining the circumstances of this case under the *Whitley* factors, we conclude that the force applied was not so excessive as to present a cognizable Eighth Amendment claim. Camp's refusal to walk through the doorway created the confrontation; force was applied for approximately twenty seconds, a reasonably short period necessary to subdue a struggling prisoner; and Camp's injuries involved four dime-sized burns, indicating that the dual-pronged EBID was applied twice. Contrary to Camp's assertions, the use of the stun gun does not prove that the amount of force was excessive. *Cf. Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir.1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment," even if the inmate is handcuffed). The brief application of the EBID was reasonably necessary to regain control of Camp.

## III.

■ Camp next challenges the circumstances of his detention in the observation

---

**1.** The record is unclear as to the precise duration and circumstances of Camp's restraint. Camp's handwritten complaint alleges that he "was left in this cell nude for approximately two (2) days and was not given any food while in restraints." However, the Magistrate Judge's report noted that:

> [t]he videotape clearly shows that Plaintiff was covered with a blanket after the four-way restraints were applied. He himself

removed the blanket after the guards left the cell. The videotape further shows that Plaintiff was fed approximately four hours after being placed in the isolation cell and that the blanket was again placed over him. Additionally, the medical records submitted by Plaintiff specifically state that Plaintiff received a "dry sack lunch" at 1515 hours on the day of the transfer.

cell following the hallway incident. More specifically, Camp contends that restraining him on a table for an extended period of time, while naked, violated the Eighth Amendment. Neither the relevant law nor the facts support such a claim in this case.

Camp's argument is properly understood as a conditions of confinement claim.[2] The District Court relied on *Johnson v. Captain Boreoni*, 946 F.2d 67, 71 (8th Cir.1991), for its ruling that Camp had not demonstrated a genuine issue of material fact that being held in the observation cell for two days without clothing (although with a blanket) violated the Eighth Amendment. In *Johnson*, the Eighth Circuit affirmed the district court's grant of qualified immunity to prison officials after placing an inmate in a small "quiet cell" for up to 36 hours without clothing, bedding, or personal materials, in response to that inmate's causing a disturbance. *Id.* at 69–72. But, as the Eighth Circuit recognized in *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir.1995), *Johnson* was decided prior to the Supreme Court's seminal decision in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), which marked a new understanding of Eighth Amendment jurisprudence. Post-*Farmer*, "[p]rison officials do not violate the Eighth Amendment by placing a prisoner in a strip cell unless they deny the inmate 'the minimal civilized measure of life's necessities,' and knowingly disregard an excessive risk to the inmate's health or safety created by such a deprivation." 49 F.3d at 446 (quoting *Farmer*, 511 U.S. at 834, 837, 114 S.Ct. 1970).

In *Williams*, an inmate violently assaulted his wife while she was visiting him in prison. Officials confined him to a "strip cell" for four days without any clothes, bedding, or running water. The inmate was provided with a light, toilet, sink, and regular meals. *Id.* at 444. The Eighth Circuit concluded that these conditions did not deny the prisoner the minimal civilized measure of life's necessities. *Id.* at 445. His behavior was threatening, and under the circumstances, these deprivations served legitimate penological goals of preventing injury to himself and others and damage to the facility. *Id.* at 446.

Here, Camp had provoked a violent disturbance. The evidence shows that he was fed. His clothing was not removed, as Camp contends, for the purposes of humiliation without legitimate penal concerns. He was stripped to be certain he did not possess a weapon or other contraband. He was shackled to ensure his safety, as well as that of the guards and medical personnel examining him. Most significantly, the Magistrate Judge, who viewed the videotape, found that Camp himself removed the blanket that prison officials had used to cover him. Camp's prolonged nakedness was the result of his own actions. His arguments about exposure while videotaped and in the presence of female prison personnel cannot overcome the factual record, which demonstrates that the indignities he complains of were not inflicted by the defendants.

Finally, because Camp has not proven misconduct by subordinate prison officials, he necessarily cannot establish supervisory liability on the part of those responsible for the policies under which he was de-

2. The Magistrate Judge's report that was adopted by the District Court correctly noted that, although Camp's complaint did not allege a Fourth Amendment violation, he now questions the legality of the strip search. Like the District Court, we follow the rule that a motion for summary judgment cannot be defeated by alleging claims not raised in the pleading. *See, e.g., Landano v. United States Dep't of Justice*, 873 F.Supp. 884, 891 (D.N.J.1994).

tained in the observation cell. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir.1986).

\* \* \* \* \* \*

For the reasons stated, we conclude that Camp presents no genuine issues of material fact on his Eighth and Fourteenth Amendment claims. Accordingly, we affirm the judgment of the District Court.