NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3636
_____

NATHANIEL L. ADDERLY,
                                        Appellant

v.

C.O. I FERRIER; C.O. 1 SCHAMP; C.O. 1 JOHNSON; C.O. 1 BLAKE; LT. FRANK;
SGT. MATTHEWS; C.O. 1 STEPHENS; C.O. 1 GAGNON; SGT. AUGUSTINO; C.O.
1 WILCHER; LT. YOCUM; CAPT. BOVO; C.O. 1 BLAKER
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:07-cv-00507)
District Judge:  Honorable Nora B. Fischer
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 20, 2011

Before: BARRY, FISHER and STAPLETON, Circuit Judges

(Opinion filed  March 10, 2011)
_____

OPINION
_____

PER CURIAM

    This is an appeal from the District Court's grant of defendants' motion for

1

summary judgment. For the following reasons, we will summarily affirm. See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

On April 12, 2007, Nathaniel Adderly, an inmate currently housed at the State Correctional Institution at Dallas, Pennsylvania, filed a pro se civil rights action in the District Court pursuant to 42 U.S.C. § 1983. He initially filed his complaint in the Eastern District of Pennsylvania on March 9, 2007, and it was subsequently transferred to the Western District, since that is where the alleged incidents occurred. Adderly's claims stem from a number of incidents that occurred during his time as an inmate at the State Correctional Institution at Greene, Pennsylvania, between January 2005 and April 14, 2005, and that allegedly involved the use of excessive force and unlawful conditions of confinement.

In September 2009, the defendants filed a motion for summary judgment. After Adderly filed a response to the motion, the Magistrate Judge issued a Report in June 2010, recommending a grant of defendants' motion for summary judgment as to all claims. In June 2010, the District Court adopted the Magistrate Judge's Report, and granted the defendants' motion for summary judgment. Adderly then filed a motion for reconsideration, which the District Court also denied. Adderly now appeals from those District Court decisions.[1]

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and may affirm the District Court's judgment on any basis supported by the record. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

We exercise plenary review over the District Court's grant of the defendants' motion for summary judgment.  See Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009).  A motion for summary judgment should be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party first must show that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating a genuine issue for trial.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  "Our role in reviewing a grant of summary judgment is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (internal quotation marks and citation omitted).

Before reaching the merits of Adderly's claims, we must address the District Court's ruling regarding the timeliness of those claims.  In § 1983 cases, federal courts apply the state personal injury statute of limitations, which is two years in Pennsylvania. See 42 Pa. Cons. Stat. Ann. § 5524; Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003).  Each of Adderly's claims accrued on the day or days when the alleged incidents on which each claim is based occurred, since that is when he knew of his injuries.  See Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).  Adderly filed

3

the complaint in the District Court on April 12, 2007. Accordingly, absent equitable tolling, Adderly's claims involving events before April 12, 2005, would be time-barred.

Equitable tolling is extraordinary relief, and is appropriate only when: (1) a defendant actively misleads a plaintiff regarding his or her cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted his or her claim in the wrong forum. Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000). We agree with the District Court that Adderly was entitled to equitable tolling for timely asserting claims in the wrong forum. Because Adderly first erroneously filed his complaint in the Eastern District on March 9, 2007, the statutory period was equitably tolled between that date and April 12, 2007, the date when the complaint was properly filed in the Western District. Accordingly, any claims that accrued before March 9, 2005, would be time-barred absent an additional basis for equitable tolling.

The District Court held that Adderly was entitled to additional equitable tolling during the time he spent exhausting administrative remedies. This Court has not yet ruled on the question of whether the statute of limitations applicable to § 1983 actions should be tolled while a prisoner exhausts available administrative remedies. We recognize, however, that other circuits have answered this question in the affirmative. See Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000). As the issue is not critical to the outcome of this case, we decline to now decide whether

4

exhaustion can serve as a basis for equitable tolling in § 1983 cases. Even assuming exhaustion could entitle a prisoner to equitable tolling, however, we agree with the District Court that Adderly's January 2005 claims are untimely.

In his objections to the Magistrate Judge's Report, Adderly claimed that he filed a grievance in relation to the January 2005 incidents, which would have equitably tolled the statutory period. The grievance to which Adderly referred – grievance 109870 – focuses on an incident involving alleged use of excessive force from February 5, 2005, and its general language requesting a police investigation into "other matters I have previously addressed" is not enough to bring the January incidents within the scope of the grievance. Accordingly, grievance 109870 cannot serve as a basis for equitable tolling. As to Adderly's argument that he used informal methods of exhausting his administrative remedies, we agree with the District Court's analysis of those arguments and find them lacking. Accordingly, the District Court properly held that Adderly's January 2005 claims are time-barred.

Adderly's remaining claims involve incidents from February and April 2005. The grievances Adderly filed in relation to his February claims were not exhausted until after March 9, 2005 (i.e., within two years of filing the complaint in the Eastern District). Assuming, without deciding, that the statutory period was tolled during the exhaustion period and that the February claims are timely, those claims still fail on the merits.

Moving to the merits of Adderly's remaining claims, he alleged use of excessive force against various prison officials. The Eighth Amendment prohibits prison officials

5

from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). When reviewing Eighth Amendment excessive force claims, we must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. Whether the force applied was excessive requires the examination of several factors outlined by the Supreme Court in Whitley v. Albers, 475 U.S. 312, 321 (1986), including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Adderly was subjected to cell extractions on February 5, 2005, and April 7, 2005. Both cell extractions were recorded and the DVDs were entered into evidence. The February 5 cell extraction took place in response to Adderly placing a covering over the window of his cell in violation of prison rules. After refusing to remove the covering, the extraction team came to Adderly's cell and Lieutenant Frank repeatedly ordered him to diffuse the situation by submitting to handcuffing. A review of the DVD shows that rather than obey, Adderly barricaded his cell door with his mattress. In response, Frank gave Adderly several warnings, and after Adderly continually refused to comply, Frank administered a burst of pepper spray through an opening in the cell door. This cycle of Frank ordering Adderly to submit to handcuffing, Adderly refusing to comply, and the

6

administration of pepper spray occurred three times. When Adderly still refused to comply, the extraction team entered his cell, administered short bursts of the Electronic Body Immobilizing Device shield to subdue Adderly, handcuffed and shackled him, and then removed him from the cell without incident. Adderly was then taken to a strip search area where he refused to comply with the search, at which point his clothes were cut off and he was searched. Following the search, a nurse administered saline solution to Adderly's eyes, and he was then brought to the strip cell.

The April 7 cell extraction occurred because Adderly refused to be handcuffed so that he could be transferred to a different cell. Similarly to the February 5 extraction, Adderly barricaded his cell door with his mattress and refused to comply with Frank's orders. Frank and the extraction team used the same process of continued orders to comply and bursts of pepper spray administered into Adderly's cell when he refused. During this extraction, Adderly eventually submitted to being handcuffed, and was then placed on the floor and leg irons were applied. After being moved to the strip search area, Adderly agreed to remove his clothes and submit to a strip search. He was then attended to by a nurse, and was placed in a restraint chair and transferred to his new cell.

Adderly alleged that members of the extraction team punched him on his body, head, and face during the February 5 extraction, that unnecessary force was applied during the April 7 extraction (primarily in the form of too much pepper spray), and that the DVD recording shows he was actually compliant and cooperative with prison officials during the February 5 extraction. Aside from these bare assertions, however,

7

Adderly did not offer any evidence contradicting the recordings of the cell extractions, which, despite Adderly's interpretation to the contrary, show the defendants used only the amount of force necessary to diffuse a threat caused by Adderly's refusal to comply with simple orders. Moreover, the medical reports written up following the incidents show that Adderly was not injured. Accordingly, no reasonable jury could conclude the defendants used excessive force during the cell extractions, and summary judgment was appropriate.[2]

Adderly asserted another claim of excessive force against Officer Ferrier that stemmed from Adderly's refusal to submit to a pat down after exiting the restricted housing unit ("RHU") library. Adderly claimed that after he refused to be patted down, Ferrier very tightly squeezed his bicep, slammed Adderly into the wall face first, and punched Adderly in the face resulting in a momentary concussion. The defendants conceded that some use of force was applied to Adderly, but argued the force was limited to restraining Adderly against the wall to regain control over him after he refused to submit to a pat down. After this incident, Adderly was examined by a nurse who noted in her report that there were "no visible injuries." We agree with the District Court's analysis of the claim, and note that any assertions made by Adderly that he was injured

---

[2] Adderly also claimed that the February 5 cell extraction was in retaliation for exercising his First Amendment rights to free speech. Adderly, however, did not expound on what speech he was allegedly punished for. Because Adderly provided no support for this assertion, the retaliation claim fails.

do not have any evidentiary support in the record. Accordingly, the District Court properly granted summary judgment.[3]

Adderly also claimed that he suffered unlawful conditions of confinement while housed in strip cells after the February and April cell extractions. A prisoner making a conditions of confinement claim must satisfy the two-part test established by the Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994). First, the prisoner must show that he was subjected to a sufficiently serious deprivation that resulted in the denial of "the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citation omitted). Second, the prisoner must show that the defendant was "deliberately indifferent" to inmate safety. Id.

Adderly's first conditions of confinement claim arises from his time in a strip cell from February 5, 2005, to February 12, 2005.[4] Adderly asserted that he was deprived of clothing, toiletries, legal mail, a pillow, and a mattress, and was denied access to the law library and showers for seven days. Adderly asserted essentially the same basis for a conditions of confinement claim based on his stay in a strip cell from April 7, 2005, to April 14, 2005. Although the deprivations Adderly allegedly suffered during those

---

[3] To the extent that Adderly alleged a claim of failure to protect against other prison officials who did not intervene in the cell extractions and Ferrier's use of force to restrain Adderly, those claims fail. Considering there was no use of excessive force, none of the other defendants could be liable for failing to intervene.

[4] In Adderly's grievance regarding this claim, he alleged that he spent five days in the strip cell, but in his complaint he alleged a period of seven days in the strip cell. Liberally construing Adderly's filings, we will consider the claim as involving seven days in the strip cell.

9

periods of confinement may have been harsh, they do not constitute a denial of "the minimal civilized measures of life's necessities." See, e.g., Williams v. Delo, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).

Moreover, although Adderly claimed prison officials deprived him of certain amenities in the strip cell for vindictive reasons, he put forward no evidence of deliberate indifference – i.e., that prison officials knew of, and disregarded, an excessive risk to Adderly's health or safety. See Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). Accordingly, no reasonable jury could find that Adderly's conditions of confinement in the strip cell were unconstitutional.

In addition to Adderly's more general allegations regarding his conditions of confinement, he also more specifically claimed a constitutional violation for being denied meals during his time in the strip cell from April 7, 2005, to April 14, 2005. In his complaint, Adderly did not specify which meals he was denied. In his prison grievance dealing with the same incident, Adderly claimed he "was denied breakfast and lunch trays," with no mention of dinner trays. In his appeal of the grievance, Adderly explained he was deprived of meals "by F-block 6-2 shift officers," which the District Court interpreted to mean that Adderly was deprived of meals from 6 a.m. to 2 p.m. (i.e., breakfast and lunch only). In his objections to the Magistrate Judge's Report, Adderly

10

alleged for the first time that he in fact had been deprived of all meals during his time in the strip cell, which added up to approximately nineteen meals.

In support of the motion for summary judgment, the defendants included the prison's initial review response to Adderly's grievance. In the response, non-defendant Lieutenant Santoyo denied Adderly's grievance. Based on his investigation of the matter, Santoyo concluded that Adderly refused some meals and was denied others when he failed to comply with feeding procedures. The defendants also included Adderly's DC-17X record from April 3, 2005, through April 16, 2005, which documents a prisoner's daily activities. Although the records are incomplete (they do not include the first three days during which Adderly claimed he was denied meals – i.e., April 7 through April 9), the portion of the records that was included shows that Adderly did receive certain meals, and was only denied meals when he refused them or failed to follow feeding procedures.

Although there is some dispute on the record regarding the number of meals Adderly did not receive during his April stay in the strip cell, we agree with the District Court that no reasonable jury could find that Adderly established the deliberate indifference prong of the Eighth Amendment analysis. In their motion for summary judgment, the defendants came forward with concrete evidence (in the form of the DC-17X record) that Adderly refused some meals, and was denied others for failing to follow feeding procedures. Adderly's only response to that evidence — in his response to the defendants' statement of material facts and in his objections to the Magistrate Judge's Report – was that it was "misleading." Aside from characterizing the evidence as

misleading, Adderly never addressed the issue of whether he actually refused certain meal trays and was denied other meals because of his behavior.

If, as the defendants' documentary evidence demonstrates, Adderly refused various meals and was legitimately denied others, it cannot be established that prison officials knew of, and disregarded, an excessive risk to Adderly's health or safety. See Whetzel, 256 F.3d at 125. If Adderly refused meals, prison officials would have logically believed that Adderly was receiving sufficient nourishment and did not face a health risk. And if Adderly failed to comply with feeding procedures, prison officials were within their rights to deny Adderly a meal. By doing nothing more to rebut the defendants' evidence than call it "misleading," Adderly did not come forward with specific facts demonstrating a genuine issue for trial regarding why Adderly did not receive certain meals. See Ridgewood Bd. of Educ., 172 F.3d at 252; see also Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Because that issue is part and parcel to the deliberate indifference analysis, no reasonable jury could find an Eighth Amendment violation based on the evidence in the record. Accordingly, the District Court properly granted summary judgment.[5]

To the extent that Adderly attempted to raise a First Amendment claim of denial of access to the courts due to temporary denial of access to the prison library, a First

---

[5] Adderly also claimed that the denial of meals was in retaliation for exercising his First Amendment rights to free speech. Adderly, however, provided no details regarding what speech he was allegedly punished for. Because Adderly provided no support for this assertion, the retaliation claim fails.

Amendment claim of free speech in relation to a temporary denial of his mail, a Due Process claim for being transferred to strip cells without sufficient process, retaliation claims for the filings of misconducts or negative comments written in Adderly's file, any additional conditions of confinement claims, any additional excessive force claims, or any other constitutional claims, we find such claims lack merit for substantially the reasons given by the District Court in its thorough opinions.  Accordingly, the District Court was correct in granting summary judgment as to those claims.

Because this appeal does not present a substantial question, we will summarily affirm the District Court's judgment.  <u>See</u> 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.