NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3985
_____

R.I., INC.,
d/b/a
Seating Solutions;
LISA SUPRINA, in her official capacity as President
and individual capacity as a citizen of the United States;
SCOTT SUPRINA, in his official capacity as Vice President
and individual capacity as a citizen of the United States;
TONY ENGLISH, in his official capacity as Secretary
and his individual capacity as a citizen of the United States,

Appellants

v.

MICHAEL MCCARTHY, in his individual capacity and
official capacity as Director of NJDOL;
RAYMOND SMID, in his individual capacity and
official capacity as Section Chief NJDOL;
THEODORE E. TARDIFF, in his individual capacity
and official capacity as Supervisor NJDOL
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-01021)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit LAR 34.1(a)
May 25, 2012

Before:  RENDELL, FUENTES and HARDIMAN, *Circuit Judges*.

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

R.I., Inc., doing business as Seating Solutions, along with Lisa Suprina, Scott Suprina, and Tony English (collectively, Plaintiffs), appeal the District Court's summary judgment. Because we agree with the District Court that Defendants Michael McCarthy, Raymond Smid, and Theodore Tardiff are entitled to qualified immunity, we will affirm.

I

We recite only the essential facts and procedural history of the case, and we do so in the light most favorable to Plaintiffs against whom summary judgment was entered. *E.g.*, *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 866 n.2 (3d Cir. 2012) (citing *Couden v. Duffy*, 446 F.3d 483, 489 n.1 (3d Cir. 2006)).

A

Plaintiffs are a company that installs spectator seating and three of its officers. Defendants are three former officials of the New Jersey Department of Labor and Workforce Development (NJDOL). During the relevant time periods, McCarthy was the Director of the Division of Wage and Hour Compliance, Smid was his subordinate and the Section Chief of the Public Contracts Section, and Tardiff was a District Supervisor under Smid.

In 2005, the employees of Seating Solutions formed a union and the union entered into a collective bargaining agreement (CBA) with the company's management. The CBA contained an Appendix A in which the union relinquished its rights under federal and state prevailing wage laws in exchange for a guarantee of year-round work for its members who met certain requirements. Around that time, the local carpenters' union had a meeting with Scott Suprina at which it asserted its belief that the carpenters were entitled to the Seating Solutions work and implied that it would retaliate if Seating Solutions did not meet its demands. Seating Solutions did not hire the carpenters' union. The carpenters then filed a complaint against Seating Solutions with the NJDOL, which initiated an investigation into the company's work on various projects.

The investigation was conducted pursuant to the NJDOL's responsibility to enforce the New Jersey Prevailing Wage Act (PWA), 1963 N.J. Laws ch. 150 (codified as amended at N.J. Stat. Ann. § 34:11-56.25 *et seq.*). The PWA provides civil penalties for contractors who fail to pay the "prevailing wage" on public-works contracts. N.J. Stat. Ann. §§ 34:11-56.35, -56.36, -56.40, -56.47. The prevailing wage is defined as "the wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workers of that craft or trade subject to said collective bargaining agreements, in the locality in which the public work is done." N.J. Stat. Ann. § 34:11-56.26(9). The commissioner of the NJDOL periodically sets the prevailing wage for each trade in each locality and has the authority to enforce the PWA. N.J. Stat. Ann. §§ 34:11-56.30 to -

3

56.31. After notice and a hearing on an alleged violation, for example, the commissioner may revoke or suspend a contractor's registration or require the contractor to post a surety bond. N.J. Stat. Ann. § 34:11-56.56.

During the investigation, the NJDOL ordered Seating Solutions to produce various documents. In August 2005, Tardiff recommended that Seating Solutions be debarred, that is, prohibited from conducting public work. McCarthy approved this recommendation and Plaintiffs were sent the required notices, which assessed penalties, fees, and additional wages for failure to comply with the PWA. A state administrative law judge (ALJ) held a hearing on the proposed debarment and subsequently issued an order upholding the assessed amounts and debarring Plaintiffs for three years. The New Jersey courts affirmed the ALJ's decision.

B

Plaintiffs filed this 42 U.S.C. § 1983 action in the United States District Court for the Eastern District of New York in 2005. The case was transferred to the District of New Jersey in early 2006. In March 2007, the District Court bifurcated the case, dismissing the complaint pursuant to the *Younger* abstention doctrine insofar as it sought injunctive and declaratory relief, and staying the matter to the extent that it sought money damages. The Court reopened the case in 2009, and after a period of discovery granted Defendants' motion for summary judgment on the basis of qualified immunity. Plaintiffs

4

filed this timely appeal.[1]

## II

Plaintiffs raise several challenging preemption arguments, in essence contending that Defendants' actions infringed upon their federal rights conferred by the National Labor Relations Act (NLRA), 49 Stat. 449 (1935) (codified as amended at 29 U.S.C. § 151 *et seq.*), and the Labor Management Relations Act (LMRA), 61 Stat. 136 (1947) (codified as amended at 29 U.S.C. § 141 *et seq.*). In particular, they argue that the preemption doctrines articulated in *Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976), *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), and § 301 of the LMRA prohibited the actions of Defendants.[2] These are interesting arguments, but

---

[1] The District Court had jurisdiction over this suit pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. Contrary to Defendants' assertion, the District Court's subject-matter jurisdiction was not impeded by the *Rooker-Feldman* doctrine, at least because the federal complaint was filed before the state-court proceedings concluded. Consequently, this is not a "case[] brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[2] *Machinists* "proscribes state regulation and state-law causes of action concerning conduct that Congress intended to be unregulated, conduct that was to remain a part of the self-help remedies left to the combatants in labor disputes." *Belknap, Inc. v. Hale*, 463 U.S. 491, 499 (1983) (citations omitted). Under *Garmon*,

state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]. The state regulation or cause of action may, however, be

5

we need not reach them. Assuming *arguendo* that the NLRA or LMRA preempts the PWA as applied to the facts of this case, thereby providing Plaintiffs with a federal right, Defendants are entitled to qualified immunity from suit because that right is not clearly established.

We review the grant of qualified immunity on summary judgment *de novo*. *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). "The qualified immunity doctrine 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

"A right is clearly established for qualified immunity purposes where its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Sharp*, 669 F.3d at 159 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Because those contours are frequently delineated by decisional law, we look to past cases to discern whether a right is clearly established. *See, e.g.*, *Bayer v. Monroe*

---

sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility.

*Id.* at 498 (citation omitted). Finally, § 301 of the LMRA requires that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988).

6

*Cnty. Children & Youth Servs.*, 577 F.3d 186, 192–93 (3d Cir. 2009); *Egolf v. Witmer*, 526 F.3d 104, 110 (3d Cir. 2008) (citing *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001)); *McKee v. Hart*, 436 F.3d 165, 173 (3d Cir. 2006). However, "[i]n some cases, even though there may be no previous precedent directly on point, an action can still violate a clearly established right where a general constitutional rule already identified in the decisional law applies with obvious clarity." *Sharp*, 669 F.3d at 159 (citing *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006)).

The same paradigm applies to the statutory rules at issue here. We have not found, nor have Plaintiffs cited, any precedent holding that the PWA is preempted by federal labor law. And there is no dispute that Defendants acted within the authority of the NJDOL pursuant to the PWA. Although compliance with state law will not render an official automatically immune from suit, *see Johnson v. Campbell*, 332 F.3d 199, 209 n.7 (3d Cir. 2003) (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 n.2 (2001)), such compliance—where there has never been a suggestion of unconstitutionality—is highly indicative of entitlement to qualified immunity.

State-law compliance aside, the complexity of NLRA and LMRA preemption in the wage-law setting entitles Defendants to qualified immunity. Two Ninth Circuit cases reveal the nuances of NLRA preemption in this context. In *Bechtel Construction, Inc. v. United Brotherhood of Carpenters & Joiners of America*, 812 F.2d 1220 (9th Cir. 1987), the court considered "whether a bargained-for wage reduction, approved by all parties to

7

a collective bargaining agreement, must yield to the law of California, which authorizes a state Division of Apprenticeship Standards to establish a schedule of wages to be paid to indentured apprentices." *Id.* at 1221. Observing that under *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724 (1985), some state-imposed minimum labor standards are not preempted by the NLRA, the court nevertheless concluded that the wage standards at issue were preempted because the state agency could approve negotiated lower minimums. Therefore, the set minimum was not a "true minimum." *Id.* at 1225–26. Twelve years later, the Ninth Circuit considered whether the NLRA preempted the California apprentice prevailing wage law. *Dillingham Constr. N.A., Inc. v. Cnty. of Sonoma*, 190 F.3d 1034, 1036–37 (9th Cir. 1999). The court reached the opposite result, holding that the law was not preempted. *Id.* at 1037. In doing so, it distinguished *Bechtel* because the law at issue in *Dillingham* did, in fact, "establish[] true legal minimums." *Id.* at 1040–41.

*Bechtel* and *Dillingham* demonstrate that preemption of prevailing wage laws depends on the details of the law at issue. *See Assoc. Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 986–91 (9th Cir. 2004) (holding that the apprentice minimum wage on private projects was not preempted by the NLRA); *Rondout Elec., Inc. v. NYS Dep't of Labor*, 335 F.3d 162, 167–69 (2d Cir. 2003) (holding that a New York prevailing wage regulation was not subject to *Machinists* preemption); *Chamber of Commerce of the U.S. v. Bragdon*, 64 F.3d 497, 504 (9th Cir. 1995) (holding a county prevailing wage

8

ordinance was preempted by the NLRA because it reached "beyond the parameters of its own public works projects to regulate wholly private construction projects"). Therefore, absent case law specifically tailoring the application of the PWA on the basis of a federally conferred labor right, any federal right to be free from PWA regulation that Plaintiffs possessed was not "clearly established" when Defendants undertook their discretionary enforcement actions.

One of our own cases further illustrates this point. In *Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley*, 37 F.3d 945 (3d Cir. 1994), we held that the Employee Retirement Income Security Act (ERISA) of 1974, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. § 1001 *et seq.*), did not preempt Pennsylvania's prevailing wage law, thereby rejecting the theory that the state law impermissibly affects the employer's ability to provide a benefits plan. *Id.* at 963–64. The plaintiffs asserted that the NLRA also preempted the state law, but the district court dismissed that claim and the plaintiffs did not challenge the dismissal on appeal. *Id.* at 952 & n.10. We nevertheless had occasion to discuss, in dicta, the Supreme Court's decision in *Building & Construction Trades Council of the Metropolitan District v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218 (1993), in which the Court held that "a bid specification by a Massachusetts state authority, requiring bidders to abide by a particular labor agreement, was not preempted by the" NLRA. *Keystone*, 37 F.3d at 955 n.15. Although we did not have to resolve the

*Trades Council* argument that the state was acting as a market participant and therefore its laws could not be preempted, we characterized it as a "novel argument" that was unlikely to succeed because it would be odd for the state to raise its own costs if it were acting as a market participant. *Id.*; *see also Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 421–26 (3d Cir. 2011) (discussing *Keystone* and the market-participant exception to preemption under the NLRA en route to the conclusion that Delaware was acting as a market regulator, and not a participant, when it enacted regulations pursuant to its prevailing wage law).

We do not raise *Bechtel*, *Dillingham*, and *Keystone* to suggest that the preemption argument advanced by Plaintiffs here could not be successful, but merely to highlight the novelty of the issues and the complexity of "preemption under the NLRA, which has no explicit preemption provision." *Keystone*, 37 F.3d at 955 n.15. The federal right asserted by Plaintiffs implicates subtle issues of preemption in the labor context, including such questions as whether the NJDOL was acting as a market participant, whether the enforcement of the PWA interferes with the collective bargaining process, and whether a periodically recalculated prevailing wage is a minimum labor standard. Where such complexity meets a dearth of legal precedent specific to the PWA, we cannot conclude that Plaintiffs had "clearly established" rights such that Defendants were "plainly incompetent or . . . knowingly violate[d] the law" in carrying out their job duties. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Accordingly, Defendants are immune from suit.

10

III

For the aforementioned reasons, we will affirm the judgment of the District Court.