**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2650
_____

RICHARD POTTS,
Appellant

v.

RONNIE HOLT; WAYNE RYAN;
A.F.S.A. DESHAWN CHINA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-12-cv-01441)
District Judge:  Honorable A. Richard Caputo

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2015
Before:  FUENTES, SHWARTZ and ROTH, Circuit Judges

(Opinion filed June 24, 2015)
_____

OPINION[*]
_____

PER CURIAM

Richard Potts appeals pro se from the District Court's order entering summary

judgment in favor of the defendants.  We will affirm in part, vacate in part, and remand

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

for further proceedings.

                                        I.

In reciting the factual background of this case, we accept as true the factual allegations in Potts's amended complaint and draw all reasonable inferences from the record in his favor. Potts is a federal prisoner who was incarcerated at the United States Penitentiary, Canaan ("USP-Canaan") but who has since been transferred. Potts also is a practicing Muslim and has participated in the Bureau of Prisons' certified religious meal program for over ten years. On June 26, 2011, USP-Canaan was placed on lockdown for approximately two weeks when numerous inmates became ill after eating meals contaminated with salmonella. During that time, prison officials relocated food preparation to an adjacent facility, approved modified diets, and suspended the certified religious meals program.

Potts filed suit pro se under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that the defendant prison officials[1] violated the Religious Freedom Restoration Act ("RFRA") and his First and Eighth Amendment rights. In his amended complaint and a subsequent sworn declaration, Potts alleged that defendants unnecessarily suspended the certified religious meal program without notice on June 27, 2011, did not resume it until July 13, 2011, and denied him thirty-six or more

---

[1] Because the alleged conduct of particular defendants is not relevant to our disposition of this appeal, we refer to them collectively as "defendants" without suggesting that any particular defendant was responsible for any of the particular conduct discussed herein.

2

certified meals during that time. He further alleged that none of the certified meal program participants had fallen ill because the certified meals were not tainted by salmonella and that defendants should have known that fact when suspending the program, or at least by July 1 when they had an exact count of the inmates who had fallen ill and when they approved a modified menu.[2] Thus, he asserted, defendants violated his rights by suspending the program in the first place and by not reinstating it sooner than they did. Finally, Potts alleged that the alternative meals defendants provided during the lockdown were not religiously acceptable, that no one notified him that the certified meals program had been suspended, and that he thus ate "very little and most of the time nothing" for two weeks out of fear of being removed from the certified meal program for failing to comply with it. Potts requested both monetary damages and an injunction requiring defendants to serve certified religious meals during lockdowns in the future.

Defendants filed a pre-discovery motion to dismiss Potts's amended complaint or for summary judgment, and a Magistrate Judge recommended granting it on various grounds, including qualified immunity. The District Court sustained several of Potts's objections, but it ultimately agreed that defendants are entitled to qualified immunity and entered summary judgment solely on that basis. Potts appeals pro se.[3]

---

[2] In other filings, Potts suggested that defendants could have resumed the certified meals program on July 7, when food preparations at USP-Canaan resumed, or July 9, when USP-Canaan reinstated the pre-lockdown menu.

[3] We have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review of the District Court's grant of summary judgment and the legal issues underpinning a claim of

II.

We apply "a two-part analysis" to claims of qualified immunity and ask "(1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was clearly established." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (quotation marks omitted). The District Court concluded that whether defendants violated Potts's rights under the First Amendment and RFRA was materially in dispute but that defendants are entitled to qualified immunity because those rights were not clearly established. Although defendants have not challenged the District Court's ruling that Potts adequately showed a violation of his rights at this stage, our consideration of whether those rights were clearly established will benefit from some preliminary discussion of our agreement on that point.

Potts alleges that defendants violated his rights under the First Amendment and RFRA by suspending the certified religious meals program for two weeks without sufficient justification. We have long held that prisoners generally are entitled to religiously acceptable meals while in prison. See Williams v. Bitner, 455 F.3d 186, 192

qualified immunity." Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). In doing so, we "view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences" therefrom. Id. Defendants bear the burden of establishing qualified immunity at the summary judgment stage. See id. at 288. The parties dispute whether the defense of qualified immunity applies to RFRA claims, which we have not decided, but we need not address that issue because we conclude that defendants have not shown entitlement to qualified immunity on Potts's RFRA claim. We also do not address Potts's Eighth Amendment claim because he has not challenged the District Court's entry of judgment on that claim, but we note that we would affirm as to that claim for the reasons explained by the District Court.

(3d Cir. 2006); Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003); DeHart v. Horn, 227 F.3d 47, 52, 59 & n.8 (3d Cir. 2000) (en banc).  Thus, Potts's First Amendment claim turns on whether defendants' suspension of the certified religious meals program during the salmonella outbreak and resultant lockdown was reasonable under the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987).  See Williams, 343 F.3d at 216-17; DeHart, 227 F.3d at 50-51, 59 & n.8.[4]  Potts's RFRA claim turns on whether defendants' suspension of the certified meals program was (1) the "least restrictive means" of (2) furthering "a compelling governmental interest."  42 U.S.C. § 2000bb-1(b).

The District Court determined that defendants had not adduced evidence sufficient to show that their suspension of the certified meals program was reasonable under Turner or that it satisfied the RFRA standard.  We agree with these determinations because, inter alia, defendants did not establish the nature or even the existence of any nexus between the salmonella outbreak/lockdown and their suspension of certified religious meals.[5]

---

[4] The Turner factors are:  (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives" to the regulation.  Williams, 343 F.3d at 217 (quoting Turner, 482 U.S. at 89-90).

[5] Defendants relied on Bureau of Prisons Program Statement 4700.05, which provides that an "alternate menu" may be offered "[i]n emergency situations such as an institution lockdown."  (ECF No. 43-1 at 59.)  Defendants, however, presented no evidence or argument showing how (or even that) this particular emergency required suspension of the certified meals program.  Defendants also presented no evidence or argument on whether it was possible to provide certified religious meals during some or all of that

5

The District Court concluded, however, that Potts's rights were not clearly established at the time of defendants' alleged conduct. "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." Sharp, 669 F.3d at 159. The District Court defined the right at issue in this case as the right to "religious meals during a prison-wide lockdown that resulted after an outbreak of food poisoning (or disease generally) in the inmate population." (ECF No. 54 at 23.) The District Court further concluded that such a right was not clearly established because there is no case law addressing an inmate's right to religious meals in a similar factual scenario.

There does indeed appear to be a dearth of such case law. Cf. Eason v. Thaler, 14 F.3d 8, 9-10 (5th Cir. 1994) (holding only that a similar claim was not frivolous for purposes of the in forma pauperis statute). "Even though there may be no previous precedent directly on point," however, "an action can still violate a clearly established

---

time, how burdensome it would have been to do so, or whether they even considered that possibility. Nor have they provided any evidence regarding operation of the certified meals program itself, such as whether the certified meals served at USP-Canaan are prepared at USP-Canaan or whether, as Potts asserted in one of his briefs, USP-Canaan receives them prepackaged from an outside vendor. Defendants also presented no evidence or argument rebutting Potts's allegations that they could have resumed the certified meals program sooner than they did and need not have suspended it at all. To the contrary, as the District Court concluded, "the evidence in the record when viewed in the light most favorable to Potts suggests that religious diet meals could have been prepared during the lockdown." (ECF No. 54 at 15.) In sum, none of defendants' evidence explains why they withheld thirty-six or more certified meals from Potts over a period of two weeks. See Koger v. Bryan, 523 F.3d 789, 800 (7th Cir. 2008) ("We can only give deference to the positions of prison officials . . . when the officials have set forth those positions and entered them into the record.").

right where a general constitutional rule already identified in the decisional law applies with obvious clarity." Sharp, 669 F.3d at 159.

Such is the case here. At the time of defendants' alleged conduct, it was clearly established in this Circuit that prisoners' general right to freely exercise their religion gives them the more specific right to be served religiously acceptable meals while in prison. See, e.g., Williams, 455 F.3d at 192. It also had long been established that prison officials may constitutionally infringe that specific First Amendment right when prison administration so requires, but only when the infringement is reasonable under the Turner factors. See Williams, 343 F.3d at 216-17; DeHart, 227 F.3d at 50-51, 59 & n.8. And RFRA clearly establishes that defendants may not substantially burden an inmate's exercise of religion without satisfying the standard set forth in 42 U.S.C. § 2000bb-1(b).

Thus, at the time of defendants' alleged conduct, it was clearly established both that Potts had a right to religiously acceptable meals and that defendants could not infringe on that right without sufficient justification under Turner and RFRA. See Wall v. Wade, 741 F.3d 492, 502-03 (4th Cir. 2014); Lovelace v. Lee, 472 F.3d 174, 198-99 (4th Cir. 2006); Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003). In light of our precedent addressing prisoners' religious diets, no reasonable prison official could have believed that he or she could simply withhold Potts's religious meals for two weeks in the absence of some justification. And in light of Turner and RFRA, no reasonable prison official could have believed that the salmonella outbreak and lockdown provided such

7

justification in the absence of some nexus between the outbreak/lockdown and defendants' ability to provide religious meals, which the current record does not reveal.

The District Court's definition of the right in question does not account for Turner and RFRA, which already anticipate that prison officials are called upon to act in a variety of factual scenarios and that the lawfulness of their actions will be judged in the context of those specific scenarios. See, e.g., DeHart, 227 F.3d at 59 n.8 (collecting cases addressing religious diets and noting that Turner requires "a contextual, record-sensitive analysis"). The District Court's application of its definition also runs afoul of the summary judgment standard because it effectively inferred in defendants' favor the existence of a nexus between the outbreak/lockdown and defendants' suspension of religious meals that the record does not reveal. Cf. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam) ("[C]ourts must take care not to define a case's 'context' [in defining a right for qualified immunity purposes] in a manner that imports genuinely disputed factual propositions."). We have no doubt that the outbreak and lockdown posed significant challenges, and a more developed record might ultimately reveal that those challenges warranted a two-week suspension of the certified religious meals program. The mere fact that defendants acted against that backdrop, however, is not dispositive for qualified immunity purposes.

The District Court relied on one other factor in concluding that Potts's right to religiously acceptable meals was not clearly established in this context. The District Court wrote that it reached its conclusion "especially in view of the fact that inmates

8

were provided with nutritionally adequate meals containing non-meat, religiously acceptable food choices." (ECF No. 54 at 25.) The District Court did not cite any record support for that conclusion, defendants cite no such support on appeal, and this point appears to be disputed.

Potts alleged in his amended complaint that the meals offered to him during the lockdown "were cooked in animal bases that were unKosher/Halaal." (ECF No. 36 at 4.) The only evidence in defendants' submissions that they may have offered him religiously acceptable alternatives appears to be an e-mail dated July 8, 2011, from defendant DeShawn China to the Food Service Department. That e-mail reads in relevant part: "Also, remember to prepare no flesh alternatives as well. My suggestion is to utilize the Religious Diet Meals (Vegan) to accomplish this." (ECF No. 43-1 at 16.) Even drawing the inference against Potts that defendants actually began offering these meals to him on July 8 (which we will not do at this stage), China did not send this e-mail until twelve days into the lockdown. This e-mail thus does not account for Potts's allegations (which defendants thus far have not disputed) that defendants could have resumed serving certified religious meals at least by July 1 and need not have suspended the certified meal program at all.[6]

---

[6] Potts also expressly asserts in his brief in opposition to defendants' motion that all of the food he was offered during the lockdown was non-kosher/halaal and that defendants never offered him a "no-flesh" meal. (ECF No. 47 at 7.) These allegations are neither sworn nor contained in a pleading, but the District Court did not discredit them for those reasons or otherwise address them.

In sum, the District Court erred in concluding on this record that defendants are entitled to qualified immunity on Potts's First Amendment and RFRA claims. We express no opinion on the merits of those claims or on whether, at some later stage, defendants might show that they are entitled to qualified immunity. We also express no opinion on the arguments in defendants' motion to dismiss or for summary judgment that the District Court did not reach and that defendants have not raised on appeal. Finally, we express no opinion on Potts's claim for injunctive relief, which the District Court did not address.[7]

III.

For the foregoing reasons, we will affirm the judgment of the District Court as to Potts's Eighth Amendment claim, vacate it as to his claims under the First Amendment and RFRA, and remand for further proceedings

---

[7] Qualified immunity provides a defense to claims for monetary damages but not for injunctive relief. See Montanez v. Sec'y, Pa. Dep't of Corr., 773 F.3d 472, 488 (3d Cir. 2014). It appears that Potts's claim for injunctive relief may have become moot because he has been transferred to a different facility, see Allah v. Seiverling, 229 F.3d 220, 222 n.2 (3d Cir. 2000), but the District Court can address that issue as appropriate on remand.